# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Clarence Heatley, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | 15 Cv 9534 (LAP) |
| | ) | |
| United States of America, | ) | |
| | ) | |
| *Respondent.* | ) | |

**PETITIONER'S REPLY AND SUPPLEMENTAL ARGUMENT IN SUPPORT OF HIS SUCCESSIVE § 2255 MOTION AND IN RESPONSE TO THE GOVERNMENT'S OPPOSITION**

This Court has jurisdiction over Petitioner Heatley's § 2255 motion, which further satisfies the applicable threshold statutory requirements. On the merits, the Government concedes that conspiracy to murder no longer constitutes a valid predicate offense under 28 U.S.C. § 924(c), but argues that Mr. Heatley's § 924(c) convictions are still supported by separate predicate offenses of intentional murder under N.Y. Penal Law 125.25[1] and assault under 120.05[2]. However, the record lacks legally sufficient evidence to satisfy the elements of those offenses, and therefore they may not serve as predicate offenses under § 924(c). In the absence of a valid predicate offense, Mr. Heatley's § 924(c) convictions are unlawful and should therefore be vacated.

## ARGUMENT

**I.  Mr. Heatley's § 2255 motion satisfies the threshold statutory requirements governing successive motions under 28 U.S.C. §§ 2244 and 2255.**

The statutory requirements governing successive § 2255 motions are set forth under 28 U.S.C. §§ 2244(a), (b)(3)–(4) and 2255(h). [Doc. 18 (Order dated 8/26/20)]; *Massey v. United States*, 895 F.3d 248, 251 (2d Cir. 2018). Section 2255(h) allows a successive § 2255 motion under

two circumstances, based on either: (1) newly discovered evidence; or, insofar as is relevant here, (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C.A. § 2255(h).

As the U.S. Supreme Court explained, *Johnson v. United States,* 576 U.S. 591, 606 (2015)—which struck down the residual clause of the Armed Career Criminal Act and provided the basis for the Supreme Court's subsequent invalidation of an identical provision under section 924(c) in *Davis*—announced a new rule of constitutional law with "retroactive effect . . . in cases on collateral review." *Welch v. United States,* 136 S. Ct. 1257, 1265 (2016); *see also United States v. Capriata*, 2021 WL 1180049, at *1 (S.D.N.Y. Mar. 29, 2021).

Here, Mr. Heatley argues that his § 924(c) convictions should be vacated because they are based on conspiracy offenses that are no longer valid predicate offenses under *Johnson/Davis*, and the record lacks legally sufficient evidence of other valid predicate offenses. Mr. Heatley was therefore sentenced in violation of the new constitutional rule announced in *Johnson/Davis*, satisfying the threshold requirement for successive § 2255 motions under 28 U.S.C. 2255(2). *See Massey*, 895 F.3d at 252.

The Government argues that Mr. Heatley's claim is not cognizable under § 2255 because even if his § 924(c) convictions and their corresponding sentences totaling 300 months' imprisonment are vacated, Heatley will still be serving life sentences on his remaining unchallenged convictions. But this argument, properly construed as a jurisdictional challenge, has already been rejected by courts in the Second Circuit. *See Dhinsa v. Krueger*, 917 F.3d 70, 79 (2d Cir. 2019) ("That [the defendant's] custody was independently justified under concurrent, coterminous sentences does not preclude him from satisfying the "custody" requirement."); *United States v. Martinez*, 2021 WL 1143744, at *1–2 (S.D.N.Y. Mar. 24, 2021) (rejecting the argument

that the court lacks jurisdiction under § 2255 because the defendant would still be subject to a life sentence on other convictions if the requested relief was granted).

As this Court observed, "courts in this Circuit routinely reach the merits of habeas petitions challenging fewer than all of the counts of conviction." *Martinez*, 2021 WL 1143744, at *1–2 (collecting cases). And the cases on which the Government relies are distinguishable as involving challenges to noncustodial aspects of the defendants' sentences, like restitution orders. *See United States v. Rutigliano*, 887 F.3d 98, 101 (2d Cir. 2018) (challenge to restitution order); *United States v. Kaminski*, 339 F.3d 84, 85 (2d Cir. 2003) (same); *United States v. Ross*, 801 F.3d 374, 379 (3d Cir. 2015) (challenge to fine).

Next, 28 U.S.C. § 2244(a) provides that the district court does not need to entertain the petition if "it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255." Because § 2255 provides the basis for this petition, the requirement of § 2244(a) is satisfied.

Finally, the requirements of 28 U.S.C. § 2244(3) have been met because a three-judge panel of the Second Circuit Court of Appeals timely granted Mr. Heatley's application for authorization for this Court to hear the successive § 2255 motion, based upon the panel's determination that Mr. Heatley made a *prima facie* showing that this motion satisfies the requirements of § 2244. And § 2244(4) is satisfied for all of the foregoing reasons.

## II.  Mr. Heatley's § 924(c) convictions are not predicated on crimes of violence within the meaning of the statute.

### A.  Conspiracy to commit murder is no longer a crime of violence that may serve as a predicate for a § 924(c) conviction.

The Government concedes that conspiracy to commit murder is no longer a valid predicate offense for a § 924(c) conviction. [Doc 692 at 17]; *see, e.g., United States v. Heyward*, 3 F.4th 75, 78 (2d Cir. 2021) (holding conspiracy to commit murder does not qualify as a predicate crime

supporting a § 924(c) conviction); *United States v. Erbo*, No. 97-CR-1105, 2020 WL 6802946, at *2 (S.D.N.Y. Nov. 19, 2020). But the Government argues that Mr. Heatley's § 924(c) convictions are still valid because they are supported by the separate predicate offenses of intentional murder and assault under N.Y. Penal Law §§ 125.25[1] and 120.05[2], respectively. However, the record lacks legally sufficient evidence to satisfy the elements of those offenses, and therefore, they cannot serve as valid predicate offenses under § 924(c).

### B. The record lacks legally sufficient evidence of separate valid predicate offenses to support Mr. Heatley's § 924(c) convictions.

Following *Davis*, a § 924(c) conviction remains valid only if it rests on a valid predicate offense under state law[1] that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) ("physical force clause"); *see, e.g., United States v. Capriata*, No. 12-Cr-712 (SHS), 2021 WL 1180049, at *2 (S.D.N.Y. Mar. 29, 2021). As the Second Circuit Court of Appeals very recently recognized, "the Supreme Court has long held that to be a crime of violence under the [physical] force clause [of § 924(c)], a crime must *categorically* involve the use of force*." United States v. Capers*, -- F.4th --, 2021 WL 5894685, at *6 (2d Cir. Dec. 14, 2021) (citing *Taylor v. United States*, 495 U.S. 575, 588-90 (1990)). To make this determination, courts engage in "a categorical inquiry to determine the minimum criminal conduct necessary to satisfy the elements of a crime, without regard to whether the defendant himself engaged in more egregious conduct." *Moore v. United States*, 2021 WL 5264270, at *1 (2d Cir. Nov. 12, 2021); *Capers,* 2021 WL 5894685, at *6 ("In other words, it is not enough that the evidence in the case shows that the defendant committed the charged predicate

---

[1] *Boykin v. United States*, 2020 WL 774293, at *6 (S.D.N.Y. Feb. 18, 2020) ("While murder is defined by federal law, *see* 18 U.S.C. § 1959(a)(1), what the federal statute criminalizes is behavior that qualifies as "murder" under state law.").

crime in a way that involved the use of force (as, indeed, it did here). Instead, the predicate crime must be one whose elements are defined in such a way that the crime must, in every instance, by its very definition, involve the use of force.") (cleaned up).

Where the relevant state statute is divisible—that is, it "sets out one or more elements of the offense in the alternative"—courts employ a "modified" categorical approach which allows a limited examination of the record, including the plea allocution. *Capers*, 2021 WL 5894685, at *6, n. 6; *Moore*, 2021 WL 5264270, at *1. While an uncharged offense may serve as a § 924(c) predicate, there must nevertheless be "a sufficient factual basis in the record, demonstrating that the defendant, in fact, committed the predicate offense." *Johnson v. United States*, 779 F.3d 125, 129 (2d Cir. 2015); *United States v. Biba*, 788 Fed. Appx. 70, 72 (2d Cir. 2019) (vacating a § 924(c) conviction because the defendant did not allocute to the elements of attempted robbery during his guilty plea); *Rodriguez v. United States*, 2021 WL 2137758, at *7–8 (S.D.N.Y. May 26, 2021) (vacating § 924(c) because the jury instructions and jury verdict sheet failed to show that the jury verdict was based on valid predicate offense); *United States v. Capriata*, 2021 WL 1180049, at *2 (S.D.N.Y. Mar. 29, 2021) (holding that no alternate predicate existed where defendant did not admit to discharging a firearm during the commission or any of the elements of the alternate offense during his plea allocution). *Cf. United States v. Carrillo*, 229 F.3d 177, 183–84 (2d Cir. 2000) ("if the conduct proved at trial did not satisfy the elements of the offense as defined by state law, a jury could not find that the defendant had committed the state law offense charged as a predicate act of racketeering:).

The Government asserts that intentional murder under N.Y. Penal Law § 125.25[1] and assault with a dangerous weapon under § 120.05[2] provide valid alternate predicate offenses for Mr. Heatley's § 924(c) convictions. [Doc. 692 at 18, n. 3]. But the indictment does not specify

which provisions of the New York Penal Code provide the predicate offenses for the § 924(c) charges, *see* Ex. A (attached). And the offense of murder under N.Y. Penal Law § 125.25 is divisible. *See, e.g., Boykin*, 2020 WL 774293, at *6.  The statute defines murder as encompassing not only intentional murder under § 125.25[1], but also depraved-indifference and felony and murder under §§ 125.25[2] and [3], respectively. And because felony and depraved-indifference murder do not require the use of force, those offenses may not serve as predicate crimes of violence within the meaning of § 924(c).[2]

Under these circumstances, courts look to the plea allocution to determine which statutory offense applies and whether legally sufficient evidence exists to satisfy each element of that offense. *See, e.g., Biba*, 788 Fed. Appx. at 72; *Capriata*, 2021 WL 1180049, at *2; *Clayton v. United States*, 456 F. Supp. 3d 575, 576 (S.D.N.Y. 2020); *Aquino v. United States*, No. 13-CR-536, 2020 WL 1847783, at *2 (S.D.N.Y. Apr. 13, 2020). In *Biba*, for example, the Second Circuit Court of Appeals vacated the defendant's § 925(c) conviction under *Davis* because the defendant had only admitted to conspiracy to commit Hobbs Act robbery during the plea allocution, and not to the elements of Hobbs Act robbery. 788 Fed. Appx. at 72. The Court of Appeals observed that although "[the defendant] admitted that he *agreed* to be the get-away driver, [the defendant] did not state at any point during his allocution that he *was* the get-away driver or that he took any step towards the commission of the robbery." *Id.*

Here, as in *Biba*, the transcript of Mr. Heatley's plea allocution shows that he did not admit to the elements of intentional murder under N.Y. Penal Law § 125.25[1]. *See Heatley v. United*

---

[2] Courts have not addressed the question "whether a conviction under 18 U.S.C. § 1959(a)(1) for VICAR depraved-heart murder or felony murder constitutes a 'crime of violence' for purposes of 18 U.S.C. § 924(c)(3)(A)." *Moore*, 2021 WL 5264270, at *2, n. 2.

*States*, 2002 WL 1836753, at *4 (S.D.N.Y. Aug. 12, 2002) ("Heatley was pleading guilty to federal offenses; citation of underlying state law offenses was unnecessary."). For example, with respect to the murder of Alex Brown, the transcript reveals that "Alex Brown was murdered in the course of another murder," Ex. B, at 42:16-19 (attached), and the Government conceded that "Alex Brown was never the intended victim." *Id.* at 42:20-21. The record evidence thus provides insufficient evidence of intent to murder Alex Brown, an element of § 125.25[1]. Similarly, with respect to the murder of Michael Taylor, the transcript shows only that "Heatley directed a crew member to do whatever another crew member, Harold Taylor, told him to do; that Taylor then directed the crew member to murder Robert Riley." Again, this evidence is legally insufficient proof of intentional murder under § 125.25[1]. Likewise, with respect to assault with a dangerous weapon of Anthony Rodriguez, the plea allocution shows that Anthony Rodriguez was injured and shot by a gang member in the course of murdering someone else and that his shooting was "not part of the plan." *Id.* at 27:5-11. Thus, the record lacks legally sufficient evidence of intent required by N.Y. Penal Law § 120.05[2].

In sum, the record fails to contain legally sufficient evidence to satisfy the elements of intentional murder and assault under N.Y. Penal Law §§ 125.25[1] and 120.05[2]. The authority the Government relies upon is therefore distinguishable on this basis, as those cases, in contrast, involved legally sufficient record evidence of intentional murder and assault. *See e.g., United States v. Sierra*, 782 Fed. Appx. 16, 20 (2d Cir. 2019) (concluding that "murder is a crime involving the use of [physical] force" for purposes of a § 924(c) conviction) (citing *United States v. Scott*, 681 F. App'x 89, 94-95 (2d Cir. 2017) (applying § 125.25[1])); *Boykin*, 2020 WL 774293, at *6 (involving § 125.25[1]). Because conspiracy to murder is no longer a valid predicate under

§ 924(c) after *Davis* and the record lacks legally sufficient evidence of a separate valid predicate offense, Mr. Healey's § 924(c) convictions are unlawful and should therefore be vacated.

### III.    Mr. Heatley can demonstrate cause for and prejudice from his failure to file a direct appeal.

The Government argues that Mr. Heatley cannot show cause for failing to bring his claim on direct appeal, noting that prior to Mr. Heatley's convictions, a few other litigants had challenged other provisions of § 924 for vagueness in other contexts. But this Court recently rejected the same argument in *Fernandez v. United States*, where, as here, "[a]t the time of [the Petitioner's] direct appeal, the argument that Petitioner now makes would have been 'patently futile' under the pre-*Davis* Second Circuit cases." 2021 WL 5113406, at *5 (S.D.N.Y. Nov. 3, 2021). As this Court recognized, "*Davis* changed the law," and "[w]hen that occurs, a procedural default may be excused." *Id.* (citing *Ingber v. Enzor*, 841 F.2d 450, 455 (2d Cir. 1988).

The Government also argues that Mr. Heatley cannot demonstrate actual prejudice, relying on *United States v. Dussard*, 967 F.3d 149 (2020), which found harmless error on appeal because the defendant could not show that he would not have pleaded guilty to a separate drug trafficking offense that provided a separate, valid predicate for his § 924(c) conviction. *Dussard*, however, is distinguishable because the defendant there, unlike here, was convicted of drug trafficking offenses, which provided separate, undisputedly valid predicate offenses to Dussard's 924(c) convictions. Here, in contrast, Mr. Heatley disputes that separate valid predicate offense exist to support his § 924(c) convictions, arguing that there is legally insufficient record evidence of crimes of violence based on murder, attempted murder and assault as defined under the New York Penal Law. Accordingly, Mr. Heatley has sustained actual prejudice in being convicted on an unlawful charge. *Fernandez v. United States*, 2021 WL 5113406, at *5 (S.D.N.Y. Nov. 3, 2021).

**CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that this Court vacate his § 924(c) convictions and their corresponding sentences.

Dated: December 15, 2021
 Brooklyn, New York

JONATHAN ROSENBERG, PLLC

By: Jonathan Rosenberg, Esq.
*Attorneys for Plaintiff*
137 Court Street, Fl. 2
Brooklyn, New York, 11201
(718) 715-4845
jonathan@rosenbergpllc.com

TO: All Parties Via ECF

# EXHIBIT A
# Sentencing Transcript

641heas

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ----------------------------x

 3    UNITED STATES OF AMERICA,

 4              v.                        S11 96 CR. 515 (MBM)

 5    CLARENCE HEATLEY, a/k/a "Preacher,"
      a/k/a "Dad,"
 6
                    Defendant.
 7
      ----------------------------x
 8
                                       June 4, 1999
 9                                     9:30 a.m.

10    Before:

11                  HON. MICHAEL B. MUKASEY,

12                                       District Judge

13                       APPEARANCES

14    MARY JO WHITE
           United States Attorney for the
15         Southern District of New York
      SHARON McCARTHY
16    ANDREW DEMBER
      CHRISTINE CHI
17         Assistant United States Attorneys

18    RUHNKE & BARRETT
      BY:  DAVID A. RUHNKE
19         - and -
      JOEL COHEN
20         Attorneys for Defendant

21

22

23

24

25              (In open court)
```

1           DEPUTY CLERK:  United States of America versus

2    Heatley.  Is the government ready?

3           MS. McCARTHY:  Government's ready.  Good morning,

4    your Honor.

5           THE COURT:  Good morning.

6           DEPUTY CLERK:  Defendant ready?

7           MR. RUHNKE:  Defendant's ready, your Honor.

8           THE COURT:  Good morning.

9           Ms. McCarthy, actually I understood last time

10   that there were victims present who under the law should be

11   heard from.

12          MS. McCARTHY:  Yes, your Honor.  I understand

13   that there are approximately four family members that would

14   like to address the Court.

15          THE COURT:  All right.  Do you know who they are

16   and where they are?

17          MS. McCARTHY:  Yes, they are seated in the back

18   two rows of the courtroom.

19          THE COURT:  I will hear from them.

20          Do you want to come forward?

21          Good morning.

22          MS. DIANE BOOKER:  Good morning, your Honor.  I

23   would just like to say --

24          THE COURT:  If you would, would you give your

25   name.

1          MS. DIANE BOOKER:  My name is Diane Booker.  My

2     brother, who was murdered by this individual, his name is

3     Michael Booker.  This is the day for me is for closure.

4     This man has been a -- he took not just my brother's life,

5     he took every one that was close to my brother.  My parents,

6     unfortunately they couldn't be here this morning, they're in

7     California, and I'm here and my sister to represent them.

8          This was a hideous, inhumane murder because my

9     brother was a gentle, free spirit, and this man on this day

10     in his -- my standing here, the God Almighty let me see this

11     day, that I'm glad that this is for closure, that he will

12     never see the sight of the streets.

13          And it's in the Bible.  He has children.  His

14     children's children are going to pay for his dirty, low-down

15     crimes that he committed.  He will never know what he has

16     done to them, the detrimental effect of what he has put on

17     their souls.  And if there is a hell, that's too good for

18     him.

19          And this day forth, I ask and thank God to let me

20     see it, and I hope in any form that those 13 souls that's

21     wandering, when he gets to the day that is his time to make

22     off the planet, they all meet him and do whatever.

23          Thank you, your Honor.

24          THE COURT:  Thank you, Ms. Booker.

25          MS. DENISE BOOKER:  I'm Denise Booker, Michael's

1    sister, and I can't even express how this has devastated me,

2    okay.  This man is horrible, took my brother's life, and I

3    don't feel that he should live because my brother didn't

4    have a chance to live and he didn't hurt anybody.

5              That's all I have to say.

6              THE COURT:  Okay.

7              MS. BENDALINE SUTTON:  Good morning, your Honor.

8    My name is Bendaline Sutton and I'm here to represent my

9    nephew Robert Riley.  He was a good person; he was an honest

10   person.  He served in the United States Army.  He was a foot

11   soldier in the army.  He was a good person.  He helped the

12   community.  He loved people.  He gave charity to people.

13             He left back a child, two children.  His son

14   Robert Jr. III was three months old when -- I don't know who

15   shot him, I don't know why they shot him.  And he also left

16   a daughter, which is one and a half, when he passed.  And I

17   pray to God every day.

18             I love Jesus and I love God.  And I don't know

19   who killed my nephew and why they killed my nephew, but

20   whoever did, the Bible says eye for an eye and tooth for a

21   tooth, but Jesus says something different.  And I love

22   Jesus, but whoever, and I mean whoever killed my nephew, I

23   would rather see them punished real good.  And I know Jesus

24   don't want me to say that, but I'm saying it anyway.

25   Because he was a good person, loving person, and I loved him

1   very dearly.

2          Thank you.

3          THE COURT:   Thank you.

4          MR. ISAAC CAMPBELL:   Good morning, your Honor.

5   My name is Isaac Campbell and I'm the brother of Stanley

6   Campbell --

7          THE COURT:   I have read your letter.

8          MR. ISAAC CAMPBELL:   Yes.

9          -- who was executed.   And the 26th of this month

10   Stanley would be about 34.   And he leaves two children.

11          Not only did this gentleman victimize as far as

12   killing my brother, but he also, when he did that, he

13   damaged each and every one of my family.   We all pay the

14   price for what he done.

15          Stanley no longer will be here on the holidays.

16   We won't see his presence walking through the door.   The

17   smile on his face.   His children won't have a father,

18   because he leaves a son and a daughter.

19          You know, you think about growing old with your

20   peers, your loved ones, your brothers and your sisters, but

21   that has ended because someone just felt that it was right

22   for them to just send someone to execute him.   And in a

23   manner that they did was so horrible that I don't think this

24   gentleman should never, ever see the light of day because

25   nobody else in another family should have to be victimized

1    in a manner that he did to our family.  Because he stripped

2    us, your Honor, he broke our spirit.

3              But, you know, I thank God that there is a God

4    that gives us strength to stand up, that we can show up

5    today and not that no one else should have to face something

6    like this, a heinous murder and brutal attack like he was.

7    I think an animal has not been killed in the manner that he

8    was killed.  And it's a shame before our God.

9              Thank you for letting me express the way I feel.

10   Thank you.

11             THE COURT:  Thank you, Mr. Campbell.

12             Mr. Ruhnke, I take it you have had a chance now

13   to review the presentence report with your client.

14             MR. RUHNKE:  Yes, your Honor, I have.  We have no

15   material objections.  The one comment I would make on the

16   presentence report is there is a reference in there to

17   information in prison files that Mr. Heatley was a member of

18   the Black Panther Party or the Black Liberation Army.  That

19   information dates back to the 1960s and '70s, and I hope

20   your Honor would not take that into consideration.

21             THE COURT:  I haven't.  The guidelines --

22             MR. RUHNKE:  Speak for themselves.

23             THE COURT:  -- say what they say, and it doesn't

24   influence either the sentence or any recommendation with

25   respect to the confinement.

1          MR. RUHNKE:  Thank you, your Honor.

2              In essence, we accept the guidelines as

3     calculated in the presentence report and have no corrections

4     or comments directed to the report.

5          THE COURT:  Okay.  I take it the government has

6     nothing other than what is in the report; is that right?

7          MS. McCARTHY:  That's correct, your Honor.

8          THE COURT:  You want to be heard more generally?

9          MR. RUHNKE:  Yes, your Honor.

10         THE COURT:  Go ahead.

11         MR. RUHNKE:  Your Honor, it is, I think as I

12    mentioned in the letter I sent to your Honor earlier this

13    week, a foregone conclusion that at some point this morning

14    you are going to pronounce sentence and sentence Mr. Heatley

15    to life in prison without the possibility of release, which

16    is the effect of a life sentence in the federal system.  And

17    Mr. Heatley, by his guilty plea, has accepted responsibility

18    for the many murders that were charged in this indictment.

19             Although these words may or may not be accepted

20    by the survivors who are in court, the survivors who are not

21    in court, Mr. Heatley keenly and genuinely regrets the pain

22    that has been inflicted by the crime that he has committed,

23    especially on the families.  These were innocent people.

24    They did not deserve the pain that they received.  They did

25    nothing to deserve that.

1             Mr. Heatley, despite the picture that is

2    presented in the presentence report, is a human being, is

3    not a monster.  He is a father to young children, and he's

4    about to be sentenced to the most severe sentence or the

5    second most severe sentence known to the law.  There are

6    those who will argue that a death sentence is merciful

7    compared to a sentence of life without the possibility of

8    release.

9             The sole request we make of your Honor is to make

10   the recommendation that I gather you indicated the last time

11   that you were willing to make, that assuming that the Bureau

12   of Prisons is amenable to such a classification, that he be

13   sentenced within the Southeastern region of the United

14   States Bureau of Prisons.  In effect, that would be Atlanta,

15   since that's the only penitentiary that is in that region.

16            Other than that, your Honor, we have nothing more

17   to say at this point.

18            THE COURT:  Mr. Heatley, is there anything you

19   want to tell me before I impose sentence?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  You can stay seated if you wish.

22            THE DEFENDANT:  All right.  I took some time to

23   write out this statement, and I hope that it is accepted

24   with the spirit in which it was written.  And it's sincere,

25   it's what I feel, and I would just like to say that it is

1    with deep regret and remorse that I am here today.   I cannot

2    even lay claim to anything resembling moral and social

3    responsibility.   I have betrayed my family, my neighbors and

4    community.   I have brought shame and disgrace to my parents'

5    community.   I need only look into the mirror to find the

6    only person responsible for my presence here today.

7              It is with that understanding I express my

8    profound apology for the pain and suffering I have caused so

9    many at the hands of so few.   To the mitigation specialist

10   and her staff who diligently sat long hours with my family

11   and I and reintroduced me back to myself at a time when I

12   could see nothing more than my own pain.

13             Ms. Albarus made me aware that every time you

14   victimize another human being, you victimize yourself even

15   more.   She challenged me to cast off the shackles of

16   self-pity, for you have weaved your own web; that I must

17   face up to the realities of my shortcomings and to show a

18   sense of character, and give back to the human community

19   that I took so much from by stopping a young man that is on

20   the road to become what I was and help him reach for higher

21   ground.

22             To the agents that handled this case, as well as

23   to their brothers in arms, I salute your courage, your

24   successful effort to stop the senseless violence and

25   destruction of my actions, and my presence here attests to

1    your dedication and commitment to make at least this small

2    part of the world safe for everybody.  I bear you no ill

3    will, and may God bless you and protect you to that end.

4              I know that some of us that live a life I was

5    living only find remorse when we find ourselves at this hour

6    before the bar at hand.  Even then, some of us are just

7    sorry we got caught.  Some are sorry we did it.  For myself,

8    I'm sorry this ever happened.

9              I realize that there are some acts that a man can

10   commit, and though apology is appropriate, it just don't cut

11   it.  Restitution to the fullest extent is the only

12   compensation that will balance the scale.  I stand before

13   this Court having committed such acts.  Knowing that water

14   seeks its own level, if you do what you do, you get what you

15   get, so I render to society her pound of flesh.

16             There is no words that I can call upon to explain

17   myself about a situation I behaved myself into.  I just want

18   the record clear for my family and community that I took the

19   first step of that long journey toward reconciliation.  I

20   did all I could do to make amends, if such a thing is

21   possible under these circumstances.

22             I don't for a moment regret that course of

23   action, for I am better for it, for now I am no longer

24   guilty of yesterday's sins, however numerous they may be.

25   Today, because of that action, I once again am an innocent

1     man.   I say to my peers contemplating making amends, there

2     is a price to pay.  You will have to dig deep to ante up for

3     justice Southern District style.   I find myself now guilty

4     by confession, a murderer, a monster, though, for the life

5     of me, I haven't killed anyone.

6                 I understand that if your hand touched the gun,

7     if you gave the nod, if you agreed, or if you just was

8     there, then you gave the devil his due.  But for the life of

9     me, I don't understand what makes one murderer better than

10    the other.  Justice without truth.

11                The parents up the block tell their children to

12    stay away from those bad kids down the block.  The parents

13    down the block tell their children to stay away from those

14    bad kids up the block.  And both parents say, "My Johnny is

15    a good boy."  What makes one murderer better than the other?

16    Justice without truth.

17                My peers ask me:  How much integrity do you need

18    to get a break in the Southern District?  Having embraced

19    the truth myself, I see no need to depart from it now.   I

20    found that if you can raise their dress as high as they

21    raise the counts in their indictments, and if you can lower

22    their panties as low as their ethical principles, and if you

23    can lie as good as they can screw people out of their

24    Constitutional rights, then you won't need one damn bit.

25                They had murderers sit down with them and tell

1   them what other people done.  I tell them what I did.  They

2   told them people they killed.  I told them people they could

3   save.  They told them people that was guilty.  I told them

4   people that was innocent.  They told them people that they

5   could bring in.  I told them people they could let out.

6            The 14th Amendment of the Constitution reads in

7   pertinent part:  "Nor shall any state deprive any person of

8   life, liberty, or property without due process of law; nor

9   deny to a person within its jurisdiction the equal

10  protection of the laws."

11           What makes one murderer better than the other?

12  Justice without truth.

13           So the prosecutors stood before Pilate, and

14  Pilate said to them:  "I will free one prisoner.  Whom do

15  you want me to free, Barabbas or Jesus?  The prosecutors

16  cried out to him:  "Free Sammy.  Free Sammy."

17           What makes one murderer better than the other?

18  It can only be a darker shade of blue.  Justice without

19  truth is a tree without roots, nurtured with tears of blood

20  from the limbs.  In the end, I'll swing in a Southern

21  District breeze, hanging from the limbs of a unicorn tree.

22           I'll conclude my statement seeing as my fate is

23  already decided.  Whatever acts I committed like a coward

24  won't stop me from taking what I have coming to me like a

25  man.

1          I read in the papers the government labeled me

2     the black hand of death.   They're good at these labels.   Be

3     that as it may, and with all due respect to your Honor, I'll

4     leave and surrender the last words to the white hands of

5     justice.

6               God forgive us all.

7               THE COURT:   I don't generally use sentencing as

8     the occasion for delivering a homily because, as somebody

9     told me before I got here, it's not a fair fight.   But there

10    are occasional exceptions, and this is one of them.

11              That speech was thoroughly characteristic of what

12    you are charged with here and thoroughly typical of what

13    your attitude has been in this court from the day this case

14    first came to me.

15              Your lawyer said that you're not a monster.   And

16    that's true, you're not.   You are a human being -- a

17    thoroughly evil human being.   And that's the reason that you

18    are going to be sentenced to what you are going to be

19    sentenced to here.

20              You have committed the worst deeds known to this

21    society, and you are going to receive the heaviest

22    punishment permitted by the law given your plea.   It is not

23    the heaviest punishment permitted by the law, period.   That,

24    however, would have been justified had you gone to trial and

25    had a jury returned a verdict warranting that punishment of

1    death.   And I would have imposed it without hesitation had

2    they done so.

3                Sentence is as follows:   With respect to Count

4    37, mandatory life; Count 66, five years consecutive; Counts

5    67 through 73, 75, 76, 78 and 81, 20 years consecutive, each

6    count, for a total of life plus 225 years.

7                In the unlikely event that you should ever see

8    daylight, you will be on five years of supervised release.

9                There is a mandatory special assessment of $2,950

10   that I must impose and do impose.   I find that the defendant

11   is without the funds to pay either a fine or the costs of

12   imprisonment, and accordingly neither of those will be

13   imposed.

14               There will be a recommendation that he serve his

15   sentence in the Southeastern region of the United States,

16   assuming that the Bureau of Prisons is amenable to that.

17               The agreement did or did not include a waiver of

18   appeal, Ms. McCarthy?

19               MS. McCARTHY:   It did, your Honor.

20               THE COURT:   It included a waiver of appeal?

21               MS. McCARTHY:   Yes.

22               THE COURT:   I think I'm nonetheless required to

23   advise Mr. Heatley that, despite the waiver, he has a right

24   to appeal if nothing else, at least to appeal the waiver.

25   If he cannot afford counsel, counsel will be appointed for

1    him, as it has been thus far, at public expense.

2              Is there anything else?  Are there any open

3    counts?

4              MS. McCARTHY:  Yes, your Honor.  At this time the

5    government dismisses all prior indictments as well as Counts

6    80 and 85 of Indictment S11 96 CR 515.  We also withdraw our

7    notice of intent to seek the death penalty.

8              THE COURT:  Those are dismissed and the notice

9    withdrawn.

10             Anything else?

11             MR. RUHNKE:  No, your Honor.  Thank you.

12

13                              oOo

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B
# SUPERSEDING
# INDICTMENT

Doc #455

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

                    - v -

CLARENCE HEATLEY,
        a/k/a "Preacher,"
        a/k/a "Dad,"
JOHN CUFF,
        a/k/a "Jack,"
        a/k/a "Big Cuz,"
RAYMOND JACKSON,
        a/k/a "Jerry Woo,"
JOHN PORTER,
        a/k/a "Apple,"
        a/k/a "Aps,"
PAUL WELLER,
        a/k/a "Nutsy,"
CURTIS MEDLEY,
        a/k/a "Curtis Goode,"
        a/k/a "Pop,"
        a/k/a "Snowman,"
        a/k/a "Whiteboy,"
DARREL BARNER,
        a/k/a "Green Eyes,"
        a/k/a "Bright Eyes,"
DARRYL HASKINS,
LEROY ECHOLS,
        a/k/a "Echo,"
STEVE FAIRLEY,
        a/k/a "Calvin Moore,"
        a/k/a "Chris,"
SHAKA HEATLEY,
        a/k/a "Shaka Bundy,"
        a/k/a "Sid,"
        a/k/a "Heavy,"
SHERMAN BAKER,
        a/k/a "Kendu,"
DAVID COLLINS,
        a/k/a "Popcorn,"
YVONNE MILLER,
        a/k/a "Mom,"
ADRIENNE BUNDY,
        a/k/a "Adee,"
BERNARD MITCHELL,
DENISE DAWSON,
        a/k/a "Nise,"
GANEENE GOODE,

                    Defendants.

- - - - - - - - - - - - - - - - - - - x



INDICTMENT
S1 96 Cr. 515 (SS)

MICROFILM
-3:00 PM
APR 2 6 1999

## COUNT ONE

The Grand Jury charges:

### THE ENTERPRISE

1.  At all times relevant to this Indictment, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND JACKSON, a/k/a "Jerry Woo," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," PAUL WELLER, a/k/a "Nutsy," CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," DARREL BARNER, a/k/a "Green Eyes," a/k/a "Bright Eyes," DARRYL HASKINS, LEROY ECHOLS, a/k/a "Echo," STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris," and SHAKA HEATLEY, a/k/a "Shaka Bundy," a/k/a "Sid," a/k/a "Heavy," the defendants, together with Sherman Baker, a/k/a "Kendu," David Collins, a/k/a "Popcorn," Yvonne Miller, a/k/a "Mom," Adrienne Bundy, a/k/a "Adee," Bernard Mitchell, Denise Dawson, a/k/a "Nise," Ganeene Goode, and Anthony Boatwright, a/k/a "Maalik," who was murdered on approximately March 21, 1994, and others known and unknown to the Grand Jury, were members and associates of a group of individuals known as the "Family" or the "Preacher Crew," a criminal organization whose members and associates engaged in murder, assault, extortion, other acts of violence, and narcotics trafficking.  The Preacher Crew operated principally in Harlem and the Bronx, New York.

2.  The Preacher Crew, including its leadership, its membership, and its associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4)

- 2 -

(hereinafter "the enterprise," "the Preacher Crew," or the "Family"), that is, a group of individuals associated in fact, although not a legal entity. The Preacher Crew engaged in, and its activities affected, interstate and foreign commerce.

3.   The Preacher Crew was founded by CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," in or about 1983.  HEATLEY was later joined by JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," in running the enterprise.  At times, CUFF and Anthony Boatwright, a/k/a "Maalik," served as HEATLEY's lieutenants, that is, managers of the Preacher Crew.  Other individuals became members of the Preacher Crew and served as "Janitors," or hit men.  Some of these individuals earned their places in the Preacher Crew by committing murder, a process known in the Preacher Crew as "making bones."  Other individuals who became members of the Preacher Crew assisted in its criminal activities by, for example, participating as look-outs and back-ups while criminal acts, such as murder, attempted murder, extortion, and assault were committed by the Lieutenants and Janitors.  RAYMOND JACKSON, a/k/a "Jerry Woo," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," PAUL WELLER, a/k/a "Nutsy," CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "White Boy," DARREL BARNER, a/k/a "Green Eyes," a/k/a "Bright Eyes," DARRYL HASKINS, LEROY ECHOLS, a/k/a "Echo," STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris," and SHAKA HEATLEY, a/k/a "Shaka Bundy," a/k/a "Sid," a/k/a "Heavy," all became members of the Preacher Crew and at different times performed one or more of the functions described above.

- 3 -

4.     At various times during the existence of the
Preacher Crew, the Crew had headquarters and bases of operations
in a variety of locations both within and outside of New York
State.   In the 1990's the Crew had one of its headquarters and
one of its main bases of operations at 2075 Grand Concourse,
Bronx, New York, where the Crew controlled numerous apartments
and the operation of the building.

5.     From in or about 1992 up to and including the date
of the filing of this Indictment, primarily in the vicinity of
1995/1997 Davidson Avenue, Bronx, New York, the Preacher Crew
operated a narcotics business that sold hundreds of kilograms of
cocaine and cocaine base, or "crack," and enforced its control
over its members and associates, and over other rival drug
dealers, through a series of acts of violence, including murder.

6.     In conducting the operations of the Crew, CLARENCE
HEATLEY, a/k/a "Preacher," a/k/a "Dad," the defendant,
established certain rules that the members were required to
follow.   Among those rules was a prohibition against Crew members
using drugs, fighting with other Crew members, or stealing drugs
or money from the Crew.   Any transgression of the Crew's rules
could result in violent punishment, such as beatings, lashings,
and even death.   CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad,"
the defendant, often supervised the infliction of punishment on
Crew members.   For example, in or about March 1994, in
retaliation for threats of violence against members of the
Preacher Crew made by Anthony Boatwright, a/k/a "Maalik," HEATLEY

- 4 -

and CUFF agreed to murder Boatwright.  On approximately March 21,
1994, CUFF shot Boatwright to death in the basement of 2075 Grand
Concourse.  CUFF then directed other members of the Preacher Crew
to dismember Boatwright's body and place the body parts in
numerous plastic bags.  CUFF and others participated in burning
Boatwright's arms and head, which were then thrown into an
abandoned building in Manhattan.  Later, the arms and head were
retrieved from the abandoned building by STEVE FAIRLEY, a/k/a
"Calvin Moore," a/k/a "Chris."

      7.   The criminal activity of the Preacher Crew
included the protection and maintenance of territory over which
the Crew claimed control.  This activity included the resolution
of disputes with other narcotics traffickers which led to
murders, shootings, extortion, and assaults.  The activities of
the Preacher Crew also included general intimidation against
persons who threatened the Crew's control of the area.

PURPOSES OF THE ENTERPRISE

      8.   The purposes of the enterprise included the
following:

      a.   Enriching the members and associates of the
enterprise through, among other things, murder, contract murder,
attempted murder, conspiracy to commit murder, assault,
extortion, and the sale and distribution of cocaine and cocaine
base.

      b.   Preserving and protecting the power of the
enterprise through the use of murder, assault, extortion, other

- 5 -

acts of violence, threats of violence, and intimidation.

        c.    Promoting and enhancing the enterprise and the activities of its members and associates.

THE MEANS AND METHODS OF THE ENTERPRISE

        9.    Among the means and methods by which the members of the enterprise and their associates conducted and participated in the conduct of the affairs of the enterprise were the following:

        a.    Members and associates of the enterprise committed, conspired, attempted and threatened to commit acts of violence, including murder and assault, to protect and expand the enterprise's criminal operations.

        b.    Members and associates of the enterprise promoted a climate of fear through violence and threats of violence to further their narcotics trafficking activities.

        c.    Members and associates of the enterprise murdered, assaulted, and attempted to murder and assault various individuals.

        d.    Members and associates of the enterprise transported narcotics, including cocaine and cocaine base, in interstate commerce.

        e.    Members and associates of the enterprise accepted and carried out contracts to murder individuals.

        f.    Members of the enterprise and their associates acquired, possessed, carried and used deadly weapons, including firearms.

## THE RACKETEERING VIOLATION

10.   From in or about 1990 up to and including the date
of the filing of this Indictment, in the Southern District of New
York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a
"Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND JACKSON,
a/k/a "Jerry Woo," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," PAUL
WELLER, a/k/a "Nutsy," CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a
"Pop," a/k/a "Snowman," a/k/a "Whiteboy," DARREL BARNER, a/k/a
"Green Eyes," a/k/a "Bright Eyes," DARRYL HASKINS, LEROY ECHOLS,
a/k/a "Echo," STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris,"
and SHAKA HEATLEY, a/k/a "Shaka Bundy," a/k/a "Sid," a/k/a
"Heavy," the defendants, together with Anthony Boatwright, a/k/a
"Maalik," who was murdered on approximately March 21, 1994,  and
others known and unknown to the Grand Jury, being persons
employed by and associated with the enterprise described in
Paragraphs 1 through 9 of Count One of this Indictment,
unlawfully, willfully, and knowingly conducted and participated,
directly and indirectly, in the conduct of the affairs of that
enterprise, which was engaged in and the activities of which
affected, interstate and foreign commerce, through a pattern of
racketeering activity, to wit, the commission of the racketeering
acts set forth in Paragraphs 11 through 27 of Count One of this
Indictment, as Racketeering Acts One through Fourteen.

## THE PATTERN OF RACKETEERING ACTIVITY

11.   The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), consisted of the following acts:

**Racketeering Act One**

12.   The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act One:

a.   **Conspiracy to Murder Tommy Jones, a/k/a "Tee"**

In or about December 1992, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and SHAKA HEATLEY, a/k/a "Shaka Bundy," a/k/a "Sid," a/k/a "Heavy," the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly conspired to murder Tommy Jones, a/k/a "Tee," in violation of New York State Penal Law.

b.   **Murder of Tommy Jones, a/k/a "Tee"**

On or about December 31, 1992, in the Southern District of New York, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and SHAKA HEATLEY, a/k/a "Shaka Bundy," a/k/a "Sid," a/k/a "Heavy," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Tommy Jones, a/k/a "Tee," in violation of New York State Penal Law.

**Racketeering Act Two**

13.    The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Two:

        a.    **Conspiracy to Murder Jose Rodriguez**

In or about April 1993, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and DARREL BARNER, a/k/a "Green Eyes," a/k/a "Bright Eyes," the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly conspired to murder Jose Rodriguez, in violation of New York State Penal Law.

        b.    **Murder of Jose Rodriguez**

On or about April 8, 1993, in the Southern District of New York, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and DARREL BARNER, a/k/a "Green Eyes," a/k/a "Bright Eyes," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Jose Rodriguez, in violation of New York State Penal Law.

        c.    **Attempted Murder of Anthony Rodriguez**

On or about April 8, 1993, in the Southern District of New York, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and DARREL BARNER, a/k/a "Green Eyes," a/k/a "Bright Eyes," the defendants, unlawfully, intentionally and knowingly attempted to murder and aided and abetted the attempted murder of Anthony Rodriguez, in violation of New York Penal Law.

### Racketeering Act Three -- Conspiracy to
### Murder Charles Whittaker

14.   In or about July 1993, in the Southern District of
New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a
"Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," and DARREL
BARNER, a/k/a "Green Eyes," a/k/a "Bright Eyes," the defendants,
together with others known and unknown to the Grand Jury,
unlawfully, willfully, and knowingly conspired to murder Charles
Whittaker, in violation of New York State Penal Law.

### Racketeering Act Four

15.   The defendants named below committed the following
acts, any one of which alone constitutes the commission of
Racketeering Act Four:

a.   **Conspiracy to Murder Milton Williams**

In or about July 1993, in the Southern District of
New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a
"Dad," and CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop,"
a/k/a "Snowman," a/k/a "Whiteboy," the defendants, together with
others known and unknown to the Grand Jury, unlawfully,
willfully, and knowingly conspired to murder Milton Williams, in
violation of New York State Penal Law.

b.   **Murder of Milton Williams**

On or about July 13, 1993, in the Southern
District of New York, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a
"Dad," and CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop,"
a/k/a "Snowman," a/k/a "Whiteboy," the defendants, unlawfully,
intentionally, and knowingly murdered and aided and abetted the

murder of Milton Williams, in violation of New York State Penal Law.

**Racketeering Act Five**

16. The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Five:

### a. Conspiracy to Murder Paul Singleton, a/k/a "Small Paul" and Michael Booker

In or about December 1993, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," and PAUL WELLER, a/k/a "Nutsy," the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly conspired to murder Paul Singleton, a/k/a "Small Paul," and Michael Booker, in violation of New York State Penal Law.

### b. Murder of Paul Singleton, a/k/a "Small Paul"

On or about December 16, 1993, in the Southern District of New York, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," and PAUL WELLER, a/k/a "Nutsy," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Paul Singleton, a/k/a "Small Paul," in violation of New York State Penal Law.

**Racketeering Act Six -- Murder of Michael Booker**

17. On or about December 16, 1993, in the Southern

District of New York, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," and PAUL WELLER, a/k/a "Nutsy," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Michael Booker, in violation of New York State Penal Law.

**Racketeering Act Seven**

18.   The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Seven:

a.   **Conspiracy to Murder**
**George Ford, a/k/a "Lou"**

In or about January 1994, in the Southern District of New York and elsewhere, JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND JACKSON, a/k/a "Jerry Woo," PAUL WELLER, a/k/a "Nutsy," and CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly conspired to murder George Ford, a/k/a "Lou," in violation of New York State Penal Law.

b.   **Murder of George Ford, a/k/a "Lou"**

On or about January 14, 1994, in the Southern District of New York, JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND JACKSON, a/k/a "Jerry Woo," PAUL WELLER, a/k/a "Nutsy," and CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of George Ford, a/k/a "Lou," in violation of New York

State Penal Law.

**Racketeering Act Eight**

19. The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Eight:

a. **Conspiracy to Murder Hayward Shine**

In or about January 1994, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," and PAUL WELLER, a/k/a "Nutsy," the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly conspired to murder Hayward Shine, in violation of New York State Penal Law.

b. **Murder of Hayward Shine**

On or about January 24, 1994, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," and PAUL WELLER, a/k/a "Nutsy," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Hayward Shine, in violation of New York State Penal Law.

**Racketeering Act Nine**

20.  The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Nine:

a.  **Conspiracy to Murder Anthony Boatwright,
a/k/a "Maalik"**

In or about March 1994, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly conspired to murder Anthony Boatwright, a/k/a "Maalik," in violation of New York State Penal Law.

b.  **Murder of Anthony Boatwright, a/k/a "Maalik"**

On or about March 21, 1994, in the Southern District of New York, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Anthony Boatwright, a/k/a "Maalik," in violation of New York State Penal Law.

**Racketeering Act Ten**

21.  The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Ten:

a.  **Conspiracy to Murder Greg Hawkins,
a/k/a "Black Greg"**

In or about April 1994, in the Southern District of New York and elsewhere, JOHN CUFF, a/k/a "Jack," a/k/a "Big

- 14 -

Cuz," RAYMOND JACKSON, a/k/a "Jerry Woo," CURTIS MEDLEY, a/k/a
"Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy,"
and DARRYL HASKINS, the defendants, and others known and unknown
to the Grand Jury, unlawfully, willfully, and knowingly conspired
to murder Greg Hawkins, a/k/a "Black Greg," in violation of New
York State Penal Law.

> b.   **Murder of Greg Hawkins, a/k/a "Black Greg"**

On or about April 5, 1994, in the Southern District of
New York, JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND
JACKSON, a/k/a "Jerry Woo," CURTIS MEDLEY, a/k/a "Curtis Goode,"
a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," and DARRYL
HASKINS, the defendants, and others known and unknown to the
Grand Jury, unlawfully, intentionally, and knowingly murdered and
aided and abetted the murder of Greg Hawkins, a/k/a "Black Greg,"
in violation of New York State Penal Law.

**Racketeering Act Eleven**

22.   The defendants named below committed the following
acts, any one of which alone constitutes the commission of
Racketeering Act Eleven:

> a.   **Conspiracy to Murder James Brunson,**
> **a/k/a "Jamie-O"**

In or about May or June 1994, in the Southern
District of New York and elsewhere, CLARENCE HEATLEY, a/k/a
"Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big
Cuz," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," LEROY ECHOLS,
a/k/a "Echo," STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris,"
and David Collins, a/k/a "Popcorn," the defendants, together with

- 15 -

others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly conspired to murder James Brunson, a/k/a "Jamie-O," in violation of New York State Penal Law.

        b.   **Murder of James Brunson, a/k/a "Jamie-O"**

On or about June 1, 1994, in the Southern District of New York, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," LEROY ECHOLS, a/k/a "Echo," STEVE FAIRLEY, a/k/a "Chris," and David Collins, a/k/a "Popcorn," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of James Brunson, a/k/a "Jamie-O," in violation of New York State Penal Law.

### Racketeering Act Twelve -- Murder of Alex Brown, a/k/a "Allie-Mo"

23.   On or about June 1, 1994, in the Southern District of New York, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," LEROY ECHOLS, a/k/a "Echo," STEVE FAIRLEY, a/k/a "Chris," and David Collins, a/k/a "Popcorn," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Alex Brown, a/k/a "Allie-Mo," in violation of New York State Penal Law.

### Racketeering Act Thirteen -- Conspiracy to Murder Larry Jones, a/k/a "Larry Love"

24.   From on or about June 1, 1994, through in or about November 1994, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND JACKSON, a/k/a

- 16 -

"Jerry Woo," and DARRYL HASKINS, the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly conspired to murder Larry Jones, a/k/a "Larry Love," in violation of New York State Penal Law.

### Racketeering Act Fourteen -- Conspiracy to Distribute Narcotics

25.   From in or about 1992 up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," PAUL WELLER, a/k/a "Nutsy," CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," LEROY ECHOLS, a/k/a "Echo," STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris," and SHAKA HEATLEY, a/k/a "Shaka Bundy," a/k/a "Sid," a/k/a "Heavy," the defendants, together with Sherman Baker, a/k/a "Kendu," David Collins, a/k/a "Popcorn," Yvonne Miller, a/k/a "Mom," Adrienne Bundy, a/k/a "Adee," Bernard Mitchell, Denise Dawson, a/k/a "Nise," Ganeene Goode, and Anthony Boatwright, a/k/a "Maalik," who was murdered on approximately March 21, 1994, and others known and unknown to the Grand Jury, unlawfully, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States, to wit, Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(A), in violation of Title 21, United States Code, Section 846.

26.   It was a part and object of the conspiracy that the defendants and their co-conspirators, both known and unknown

to the Grand Jury, unlawfully, intentionally and knowingly would
and did distribute and possess with intent to distribute 50 grams
and more of mixtures and substances containing detectable amounts
of cocaine base, in violation of Sections 812, 841(a)(1) and
841(b)(1)(A) of Title 21, of the United States Code.

27.   It was a further part and object of the conspiracy
that the defendants and their co-conspirators, both known and
unknown to the Grand Jury, unlawfully, intentionally and
knowingly would and did distribute and possess with intent to
distribute five kilograms and more of mixtures and substances
containing detectable amounts of cocaine, in violation of
Sections 812, 841(a)(1) and 841(b)(1)(A) of Title 21, of the
United States Code.

(Title 18, United States Code, Section 1962(c).)

## COUNT TWO

The Grand Jury further charges:

28.   Paragraphs 1 through 9, and 11 through 27 of Count
One of this Indictment are realleged and incorporated by
reference as though fully set forth herein.

## THE RACKETEERING CONSPIRACY

29.   From in or about 1990 up to and including the date
of the filing of this Indictment, in the Southern District of New
York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a
"Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND JACKSON,
a/k/a "Jerry Woo," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," PAUL
WELLER, a/k/a "Nutsy," CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a
"Pop," a/k/a "Snowman," a/k/a "Whiteboy," DARREL BARNER, a/k/a

- 18 -

"Green Eyes," a/k/a "Bright Eyes," DARRYL HASKINS, LEROY ECHOLS, a/k/a "Echo," STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris," and SHAKA HEATLEY, a/k/a "Shaka Bundy," a/k/a "Sid," a/k/a "Heavy," the defendants, together with Anthony Boatwright, a/k/a "Maalik," who was murdered on approximately March 21, 1994, and others known and unknown to the Grand Jury, being persons employed by and associated with the enterprise described in Paragraphs 1 through 9 of Count One of this Indictment, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise, which was engaged in and the activities of which affected, interstate and foreign commerce, through a pattern of racketeering activity, to wit, the racketeering acts set forth in Paragraphs 11 through 27 of Count One of this Indictment, as Racketeering Acts One through Fourteen.   It was a part of the conspiracy that each defendant agreed to personally commit two or more racketeering acts in the conduct of the enterprise's affairs.

(Title 18, United States Code, Section 1962(d).)

## Murder and Attempted Murder in Aid of Racketeering Activity

### COUNT THREE

The Grand Jury further charges:

30.   The Preacher Crew, as described in Paragraphs 1 through 9 of Count One of this Indictment, which are re-alleged and incorporated by reference as though fully set forth herein, constituted an enterprise as that term is defined in Title 18,

- 19 -

United States Code, Section 1959(b)(2), that is, an association
in fact of individuals engaged in, and the activities of which
affected, interstate and foreign commerce.

31.   Through its members and associates, the Preacher
Crew engaged in racketeering activity, as that term is defined in
Title 18, United States Code, Sections 1961(1) and 1959(b)(1),
namely acts involving murder, in violation of New York State
Penal Law, and narcotics trafficking, in violation of Title 21,
United States Code, Section 846.

32.   In or about December 1992, in the Southern
District of New York and elsewhere, as consideration for receipt
of, and as consideration for a promise and agreement to pay,
anything of pecuniary value from the Preacher Crew, and for the
purpose of gaining entrance to and maintaining and increasing
their positions in the Preacher Crew, an enterprise engaged in
racketeering activity, as described above, CLARENCE HEATLEY,
a/k/a "Preacher," a/k/a "Dad," and SHAKA HEATLEY, a/k/a "Shaka
Bundy," a/k/a "Sid," a/k/a "Heavy," the defendants, unlawfully,
willfully, and knowingly conspired to murder Tommy Jones, a/k/a
"Tee," in violation of New York State Penal Law.

(Title 18, United States Code, Section 1959(a)(5).)

## COUNT FOUR

The Grand Jury further charges:

33.   Paragraphs 1 through 9 and 11 through 27 of Count
One of this Indictment, and paragraphs 30 and 31 of Count Three
of this Indictment, are realleged and incorporated by reference
as though fully set forth herein.

- 20 -

34.   On or about December 31, 1992, in the Southern District of New York, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and SHAKA HEATLEY, a/k/a "Shaka Bundy," a/k/a "Sid," a/k/a "Heavy," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Tommy Jones, a/k/a "Tee," in violation of New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

## COUNT FIVE

The Grand Jury further charges:

35.   Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

36.   In or about April 1993, in the Southern District of New York and elsewhere, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and DARREL BARNER, a/k/a "Green

- 21 -

Eyes," a/k/a "Bright Eyes," the defendants, unlawfully,
willfully, and knowingly conspired to murder Jose Rodriguez, in
violation of New York State Penal Law.

(Title 18, United States Code, Section 1959(a)(5).)

### COUNT SIX

The Grand Jury further charges:

37.   Paragraphs 1 through 9 and 11 through 27 of Count
One of this Indictment, and paragraphs 30 and 31 of Count Three
of this Indictment, are realleged and incorporated by reference
as though fully set forth herein.

38.   On or about April 8, 1993, in the Southern
District of New York, as consideration for receipt of, and as
consideration for a promise and agreement to pay, anything of
pecuniary value from the Preacher Crew, and for the purpose of
gaining entrance to and maintaining and increasing their
positions in the Preacher Crew, an enterprise engaged in
racketeering activity, as described above, CLARENCE HEATLEY,
a/k/a "Preacher," a/k/a "Dad," and DARREL BARNER, a/k/a "Green
Eyes," a/k/a "Bright Eyes," the defendants, unlawfully,
intentionally, and knowingly murdered and aided and abetted the
murder of Jose Rodriguez, in violation of New York State Penal
Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

### COUNT SEVEN

The Grand Jury further charges:

39.   Paragraphs 1 through 9 and 11 through 27 of Count
One of this Indictment, and paragraphs 30 and 31 of Count Three

- 22 -

of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

40. On or about April 8, 1993, in the Southern District of New York, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and DARREL BARNER, a/k/a "Green Eyes," a/k/a "Bright Eyes," the defendants, unlawfully, intentionally, and knowingly attempted to murder and aided and abetted the attempted murder of Anthony Rodriguez, in violation of New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(5) and 2.)

### COUNT EIGHT

The Grand Jury further charges:

41. Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

42. In or about July 1993, in the Southern District of New York and elsewhere, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in

- 23 -

racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," and DARREL BARNER, a/k/a "Green Eyes," a/k/a "Bright Eyes," the defendants, unlawfully, willfully, and knowingly conspired to murder Charles Whittaker, in violation of New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(5).)

## COUNT NINE

The Grand Jury further charges:

43.   Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

44.   In or about July 1993, in the Southern District of New York and elsewhere, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," the defendants, unlawfully, willfully, and knowingly conspired to murder Milton Williams, in violation of New York State Penal Law.

(Title 18, United States Code, Section 1959(a)(5).)

- 24 -

## COUNT TEN

- The Grand Jury further charges:

45.   Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

46.   On or about July 13, 1993, in the Southern District of New York, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Milton Williams, in violation of New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

## COUNT ELEVEN

The Grand Jury further charges:

47.   Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

48.   In or about December 1993, in the Southern

- 25 -

District of New York and elsewhere, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," and PAUL WELLER, a/k/a "Nutsy," the defendants, unlawfully, willfully, and knowingly conspired to murder Paul Singleton, a/k/a "Small Paul," and Michael Booker, in violation of New York State Penal Law.

(Title 18, United States Code, Section 1959(a)(5).)

## COUNT TWELVE

The Grand Jury further charges:

49.   Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

50.   On or about December 16, 1993, in the Southern District of New York, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," and PAUL WELLER, a/k/a "Nutsy," the defendants,

- 26 -

unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Paul Singleton, a/k/a "Small Paul," in violation of New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

### COUNT THIRTEEN

The Grand Jury further charges:

51. Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

52. On or about December 16, 1993, in the Southern District of New York, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," and PAUL WELLER, a/k/a "Nutsy," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Michael Booker, in violation of New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

- 27 -

## COUNT FOURTEEN

The Grand Jury further charges:

53.   Paragraphs 1 through 9 and 11 through 27 of Count
One of this Indictment, and paragraphs 30 and 31 of Count Three
of this Indictment, are realleged and incorporated by reference
as though fully set forth herein.

54.   In or about January 1994, in the Southern District
of New York and elsewhere, as consideration for receipt of, and
as consideration for a promise and agreement to pay, anything of
pecuniary value from the Preacher Crew, and for the purpose of
gaining entrance to and maintaining and increasing their
positions in the Preacher Crew, an enterprise engaged in
racketeering activity, as described above, JOHN CUFF, a/k/a
"Jack," a/k/a "Big Cuz," RAYMOND JACKSON, a/k/a "Jerry Woo,"
PAUL WELLER, a/k/a "Nutsy," and CURTIS MEDLEY, a/k/a "Curtis
Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," the
defendants, unlawfully, willfully, and knowingly conspired to
murder George Ford, a/k/a "Lou," in violation of New York State
Penal Law.

(Title 18, United States Code, Section 1959(a)(5).)

## COUNT FIFTEEN

The Grand Jury further charges:

55.   Paragraphs 1 through 9 and 11 through 27 of Count
One of this Indictment, and paragraphs 30 and 31 of Count Three
of this Indictment, are realleged and incorporated by reference
as though fully set forth herein.

56.   On or about January 14, 1994, in the Southern

- 28 -

District of New York, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND JACKSON, a/k/a "Jerry Woo," PAUL WELLER, a/k/a "Nutsy," and CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of George Ford, a/k/a "Lou," in violation of New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

### COUNT SIXTEEN

The Grand Jury further charges:

57.   Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

58.   In or about January 1994, in the Southern District of New York and elsewhere, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a

- 29 -

"Big Cuz," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," and PAUL WELLER, a/k/a "Nutsy," the defendants, unlawfully, willfully, and knowingly conspired to murder Hayward Shine, in violation of New York State Penal Law.

(Title 18, United States Code, Section 1959(a)(5).)

## COUNT SEVENTEEN

The Grand Jury further charges:

59.    Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

60.    On or about January 24, 1994, in the Southern District of New York and elsewhere, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," and PAUL WELLER, a/k/a "Nutsy," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Hayward Shine, in violation of New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

- 30 -

## COUNT EIGHTEEN

The Grand Jury further charges:

61.   Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

62.   In or about March 1994, in the Southern District of New York and elsewhere, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," the defendants, unlawfully, willfully, and knowingly conspired to murder Anthony Boatwright, a/k/a "Maalik," in violation of New York State Penal Law.

(Title 18, United States Code, Section 1959(a)(5).)

## COUNT NINETEEN

The Grand Jury further charges:

63.   Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

64.   On or about March 21, 1994, in the Southern District of New York, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of

- 31 -

pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Anthony Boatwright, a/k/a "Maalik," in violation of New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

### COUNT TWENTY

The Grand Jury further charges:

65.   Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

66.   In or about April 1994, in the Southern District of New York and elsewhere, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND JACKSON, a/k/a "Jerry Woo," CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," and DARRYL HASKINS, the defendants, unlawfully, willfully, and knowingly conspired to murder Greg

- 32 -

Hawkins, a/k/a "Black Greg," in violation of New York State Penal Law.

(Title 18, United States Code, Section 1959(a)(5).)

### COUNT TWENTY-ONE

The Grand Jury further charges:

67. Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

68. On or about April 5, 1994, in the Southern District of New York, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND JACKSON, a/k/a "Jerry Woo," CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," and DARRYL HASKINS, the defendants, unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Greg Hawkins, a/k/a "Black Greg," in violation of New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

## COUNT TWENTY-TWO

The Grand Jury further charges:

69.   Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

70.   In or about May or June 1994, in the Southern District of New York and elsewhere, as consideration for receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Preacher Crew, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Preacher Crew, an enterprise engaged in racketeering activity, as described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," LEROY ECHOLS, a/k/a "Echo," STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris," and DAVID COLLINS, a/k/a "Popcorn," the defendants, unlawfully, willfully, and knowingly conspired to murder James Brunson, a/k/a "Jamie-O," in violation of New York State Penal Law.

(Title 18, United States Code, Section 1959(a)(5).)

## COUNT TWENTY-THREE

The Grand Jury further charges:

71.   Paragraphs 1 through 9 and 11 through 27 of Count One of this Indictment, and paragraphs 30 and 31 of Count Three of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

72.   On or about June 1, 1994, in the Southern District

- 34 -

of New York, as consideration for receipt of, and as
consideration for a promise and agreement to pay, anything of
pecuniary value from the Preacher Crew, and for the purpose of
gaining entrance to and maintaining and increasing their
positions in the Preacher Crew, an enterprise engaged in
racketeering activity, as described above, CLARENCE HEATLEY,
a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a
"Big Cuz," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," LEROY ECHOLS,
a/k/a "Echo," STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris,"
and DAVID COLLINS, a/k/a "Popcorn," the defendants, unlawfully,
intentionally, and knowingly murdered and aided and abetted the
murder of James Brunson, a/k/a "Jamie-O," in violation of New
York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

## COUNT TWENTY-FOUR

The Grand Jury further charges:

73.   Paragraphs 1 through 9 and 11 through 27 of Count
One of this Indictment, and paragraphs 30 and 31 of Count Three
of this Indictment, are realleged and incorporated by reference
as though fully set forth herein.

74.   On or about June 1, 1994, in the Southern District
of New York, as consideration for receipt of, and as
consideration for a promise and agreement to pay, anything of
pecuniary value from the Preacher Crew, and for the purpose of
gaining entrance to and maintaining and increasing their
positions in the Preacher Crew, an enterprise engaged in
racketeering activity, as described above, CLARENCE HEATLEY,

- 35 -

a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a
"Big Cuz," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," LEROY ECHOLS,
a/k/a "Echo," STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris,"
and DAVID COLLINS, a/k/a "Popcorn," the defendants, unlawfully,
intentionally, and knowingly murdered and aided and abetted the
murder of Alex Brown, a/k/a "Allie-Mo," in violation of New York
State Penal Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

## COUNT TWENTY-FIVE

The Grand Jury further charges:

75.    Paragraphs 1 through 9 and 11 through 27 of Count
One of this Indictment, and paragraphs 30 and 31 of Count Three
of this Indictment, are realleged and incorporated by reference
as though fully set forth herein.

76.    From on or about June 1, 1994, through in or about
November 1994, in the Southern District of New York and
elsewhere, as consideration for receipt of, and as consideration
for a promise and agreement to pay, anything of pecuniary value
from the Preacher Crew, and for the purpose of gaining entrance
to and maintaining and increasing their positions in the Preacher
Crew, an enterprise engaged in racketeering activity, as
described above, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad,"
JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND JACKSON, a/k/a
"Jerry Woo," and DARRYL HASKINS, the defendants, unlawfully,
willfully, and knowingly conspired to murder Larry Jones, a/k/a
"Larry Love," in violation of New York State Penal Law.

(Title 18, United States Code, Section 1959(a)(5).)

- 36 -

**Continuing Criminal Enterprise**

## COUNTS TWENTY-SIX THROUGH THIRTY-FOUR

The Grand Jury further charges:

77.    From in or about 1992, up to and including the
date of the filing of this Indictment, in the Southern District
of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher,"
a/k/a "Dad," the defendant, unlawfully, intentionally and
knowingly engaged in a continuing criminal enterprise in that he
unlawfully, intentionally and knowingly violated Sections 812,
841, and 846 of Title 21, United States Code, including but not
limited to the violations alleged in Count One, Racketeering Act
Fourteen, and Count Forty-Four of this Indictment, which are
incorporated by reference herein, as well as other violations of
said statutes, all of which violations were part of a continuing
series of violations of said statutes undertaken by CLARENCE
HEATLEY, a/k/a "Preacher," a/k/a "Dad," the defendant, in concert
with at least five other persons with respect to whom CLARENCE
HEATLEY, a/k/a "Preacher," a/k/a "Dad," occupied the position of
organizer, supervisor, and manager, and from which continuing
series of violations CLARENCE HEATLEY, a/k/a "Preacher," a/k/a
"Dad," obtained substantial income and resources.

78.    This violation involved in excess of 300 times the
quantity of a substance described in Section 841(b)(1)(B) of
Title 21, United States Code, to wit, in excess of 1,500 grams of
mixtures and substances containing detectable amounts of cocaine
base in a form commonly known as "crack."

79.    CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad,"

- 37 -

the defendant, was the principal administrator, organizer, and leader of the continuing criminal enterprise described in Paragraph 77 above.

80.   On or about the dates set forth below, while engaging in and working in furtherance of the continuing criminal enterprise alleged herein, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," the defendant, counseled, commanded, induced, procured, and caused the intentional killing of the individual victims named below, and such killing resulted:

| COUNT | DATE OF MURDER | VICTIM |
|-------|----------------|--------|
| TWENTY-SIX | 12/31/92 | Tommy Jones, a/k/a "Tee" |
| TWENTY-SEVEN | 4/8/93 | Jose Rodriguez |
| TWENTY-EIGHT | 7/13/93 | Milton Williams |
| TWENTY-NINE | 12/16/93 | Paul Singleton, a/k/a "Small Paul" |
| THIRTY | 12/16/93 | Michael Booker |
| THIRTY-ONE | 1/24/94 | Hayward Shine |
| THIRTY-TWO | 3/21/94 | Anthony Boatwright, a/k/a "Maalik" |
| THIRTY-THREE | 6/1/94 | James Brunson, a/k/a "Jamie-O" |
| THIRTY-FOUR | 6/1/94 | Alex Brown, a/k/a "Allie-Mo" |

(Title 21, United States Code, Sections 848(a), (b), (c), and (e)(1)(A) and Title 18, United States Code, Section 2.)

## COUNT THIRTY-SEVEN

The Grand Jury further charges:

83.   On or about July 13, 1993, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher, a/k/a "Dad," and CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," the defendants, unlawfully, willfully, and knowingly used and carried, and caused another to use and carry, a firearm during and in relation to a crime of violence, to wit, during and in relation to the murder of Milton Williams as charged in Racketeering Act Four of Counts One and Two, and Count Ten of this Indictment.

(Title 18, United States Code, Sections 924(c) and 2.)

## COUNT THIRTY-EIGHT

The Grand Jury further charges:

84.   On or about January 14, 1994, in the Southern District of New York and elsewhere, JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND JACKSON, a/k/a "Jerry Woo," PAUL WELLER, a/k/a "Nutsy," and CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," the defendants, unlawfully, willfully, and knowingly used and carried, and caused another to use and carry, a firearm during and in relation to a crime of violence, to wit, during and in relation to the murder of George Ford, a/k/a "Lou," as charged in Racketeering Act Seven of Counts One and Two, and Count Fifteen of this Indictment.

(Title 18, United States Code, Sections 924(c) and 2.)

### COUNT THIRTY-NINE

The Grand Jury further charges:

85.   On or about January 24, 1994, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," and PAUL WELLER, a/k/a "Nutsy," the defendants, unlawfully, willfully, and knowingly used and carried, and caused another to use and carry, a firearm during and in relation to a crime of violence, to wit, during and in relation to the murder of Hayward Shine, as charged in Racketeering Act Eight of Counts One and Two, and Count Seventeen of this Indictment.

(Title 18, United States Code, Sections 924(c) and 2.)

### COUNT FORTY

The Grand Jury further charges:

86.   On or about March 21, 1994, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," the defendants, unlawfully, willfully, and knowingly used and carried, and caused another to use and carry, a firearm during and in relation to a crime of violence, to wit, during and in relation to the murder of Anthony Boatwright, a/k/a "Maalik," as charged in Racketeering Act Nine of Counts One and Two, and Count Nineteen of this Indictment.

(Title 18, United States Code, Sections 924(c) and 2.)

- 41 -

## Using Firearms in Relation to Crimes of Violence

### COUNT THIRTY-FIVE

The Grand Jury further charges:

81.   On or about December 31, 1992, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher, a/k/a "Dad," and SHAKA HEATLEY, a/k/a "Shaka Bundy," a/k/a "Sid," a/k/a "Heavy," the defendants, unlawfully, willfully, and knowingly used and carried, and caused another to use and carry, a firearm during and in relation to a crime of violence, to wit, during and in relation to the murder of Tommy Jones, a/k/a "Tee," as charged in Racketeering Act One of Counts One and Two, and Count Four of this Indictment.

(Title 18, United States Code, Sections 924(c) and 2.)

### COUNT THIRTY-SIX

The Grand Jury further charges:

82.   On or about April 8, 1993, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher, a/k/a "Dad," and DARREL BARNER, a/k/a "Green Eyes," a/k/a "Bright Eyes," the defendants, unlawfully, willfully, and knowingly used and carried, and caused another to use and carry, a firearm during and in relation to a crime of violence, to wit, during and in relation to the murder of Jose Rodriguez and the attempted murder of Anthony Rodriguez, as charged in Racketeering Act Two of Counts One and Two, and Counts Six and Seven of this Indictment.

(Title 18, United States Code, Sections 924(c) and 2.)

## COUNT FORTY-ONE

The Grand Jury further charges:

87.  On or about April 5, 1994, in the Southern District of New York and elsewhere, JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," RAYMOND JACKSON, a/k/a "Jerry Woo," CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," and DARRYL HASKINS, the defendants, unlawfully, willfully, and knowingly used and carried, and caused another to use and carry, a firearm during and in relation to a crime of violence, to wit, during and in relation to the murder of Greg Hawkins, a/k/a "Black Greg," as charged in Racketeering Act Ten of Counts One and Two, and Count Twenty-One of this Indictment.

(Title 18, United States Code, Sections 924(c) and 2.)

## COUNT FORTY-TWO

The Grand Jury further charges:

88.  On or about June 1, 1994, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," JOHN PORTER, a/k/a "Apple," a/k/a "Aps," LEROY ECHOLS, a/k/a "Echo," STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris," and DAVID COLLINS, a/k/a "Popcorn," the defendants, unlawfully, willfully, and knowingly used and carried, and caused another to use and carry, a firearm during and in relation to a crime of violence, to wit, during and in relation to the murders of James Brunson, a/k/a "Jamie-O," and Alex Brown, a/k/a "Allie-Mo," as charged in Racketeering Acts Eleven and Twelve of Counts One and Two, and

Counts Twenty-Three and Twenty-Four of this Indictment.

(Title 18, United States Code, Sections 924(c) and 2.)

### COUNT FORTY-THREE

The Grand Jury further charges:

89.    The Preacher Crew, as described in Paragraphs 1 through 9 of Count One of this Indictment, which are re-alleged and incorporated by reference as though fully set forth herein, constituted an enterprise as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals and business entities engaged in, and the activities of which affected, interstate and foreign commerce.

90.    As set forth in paragraphs 11 through 27 of Count One of this Indictment, which are realleged and incorporated by reference as though fully set forth herein, the Preacher Crew was engaged in racketeering activity as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1).

91.    On or about March 21, 1994, and March 22, 1994, in the Southern District of New York, JOHN PORTER, a/k/a "Apple," a/k/a "Aps," RAYMOND JACKSON, a/k/a "Jerry Woo," CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," SHERMAN BAKER, a/k/a "Kendu," and STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris," the defendants, knowing that an offense against the United States had been committed, namely the murder of Anthony Boatwright, a/k/a "Maalik," as alleged in Count Nineteen of this Indictment, in violation of Title 18, United States Code, Section 1959(a)(1), unlawfully, willfully and knowingly received, relieved, comforted, and assisted the

- 43 -

offenders in order to hinder and prevent their apprehension, trial and punishment, to wit, JOHN PORTER, a/k/a "Apple," a/k/a "Aps," RAYMOND JACKSON, a/k/a "Jerry Woo," CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "Whiteboy," SHERMAN BAKER, a/k/a "Kendu," and STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris," the defendants, assisted the individuals who had murdered Anthony Boatwright, a/k/a "Maalik," in dismembering the victim and guarding and disposing of the remains of the victim following the murder.

(Title 18, United States Code, Section 3.)

## Narcotics Conspiracy

### COUNT FORTY-FOUR

The Grand Jury further charges:

92.   From in or about 1992 up to and including the date of the filing of the Indictment, in the Southern District of New York and elsewhere, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack Cuff," a/k/a "Big Cuz," PAUL WELLER, a/k/a "Nutsy," CURTIS MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a "White Boy," LEROY ECHOLS, a/k/a "Echo," STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris," SHAKA HEATLEY, a/k/a "Shaka Bundy," a/k/a "Sid," a/k/a "Heavy," SHERMAN BAKER, a/k/a "Kendu," DAVID COLLINS, a/k/a "Popcorn," YVONNE MILLER, a/k/a "Mom," ADRIENNE BUNDY, a/k/a "Adee," BERNARD MITCHELL, DENISE DAWSON, a/k/a "Nise," and GANEENE GOODE, the defendants, and others known and unknown to the Grand Jury, unlawfully, willfully and knowingly combined, conspired, confederated, and agreed together and with each other

- 44 -

to violate the narcotics laws of the United States, in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A) and 846.

93.   It was a part and object of the conspiracy that the defendants and their co-conspirators, both known and unknown to the Grand Jury, unlawfully, intentionally and knowingly would and did distribute and possess with intent to distribute 50 grams and more of mixtures and substances containing detectable amounts of cocaine base, in violation of Sections 812, 841(a)(1) and 841(b)(1)(A) of Title 21, of the United States Code.

94.   It was a further part and object of the conspiracy that the defendants and their co-conspirators, both known and unknown to the Grand Jury, unlawfully, intentionally and knowingly would and did distribute and possess with intent to distribute five kilograms and more of mixtures and substances containing detectable amounts of cocaine, in violation of Sections 812, 841(a)(1) and 841(b)(1)(A) of Title 21, of the United States Code.

## OVERT ACTS

95.   In furtherance of the conspiracy and to effect its objects, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   From in or about September 1992 through 1994, CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," the defendant, received the profits from the sale of cocaine base at 1995/1997 Davidson Avenue, Bronx, New York.

b.   From in or about September 1992 through 1994,

- 45 -

CLARENCE HEATLEY, a/k/a "Preacher," a/k/a "Dad," and YVONNE
MILLER, a/k/a "Mom," resided at 2075 Grand Concourse, Apartment
6C.

        c.    From in or about September 1992 through 1994,
YVONNE MILLER, a/k/a "Mom," ADRIENNE BUNDY, a/k/a "Adee," DENISE
DAWSON, a/k/a "Nise," and GANEENE GOODE, the defendants, cooked
cocaine into cocaine base inside various apartments at 2075 Grand
Concourse, Bronx, New York, including Apartment 6C.

        d.    From in or about September 1992 through 1994,
YVONNE MILLER, a/k/a "Mom," the defendant, gave money to another
co-conspirator, not named as a defendant herein, for the purchase
of cocaine.

        e.    From in or about September 1992 through
September 1994, YVONNE MILLER, a/k/a "Mom," and ADRIENNE BUNDY,
a/k/a "Adee," the defendants, while at 2075 Grand Concourse,
Bronx, New York, paid various individuals for working at
1995/1997 Davidson Avenue, Bronx, New York.

        f.    From in or about 1992 through 1994, CURTIS
MEDLEY, a/k/a "Curtis Goode," a/k/a "Pop," a/k/a "Snowman," a/k/a
"Whiteboy," LEROY ECHOLS, a/k/a "Echo," STEVE FAIRLEY, a/k/a
"Calvin Moore," a/k/a "Chris," SHAKA HEATLEY, a/k/a "Shaka
Bundy," a/k/a "Sid," a/k/a "Heavy," SHERMAN BAKER, a/k/a "Kendu,"
and DAVID COLLINS, a/k/a "Popcorn," worked at a crack
distribution spot located at 1995/1997 Davidson Avenue, Bronx,
New York.

        g.    From 1993 through 1994, CLARENCE HEATLEY,
a/k/a "Preacher," a/k/a "Dad," JOHN CUFF, a/k/a "Jack," a/k/a

- 46 -

"Big Cuz," PAUL WELLER, a/k/a "Nutsy," STEVE FAIRLEY, a/k/a "Calvin Moore," a/k/a "Chris," SHAKA HEATLEY, a/k/a "Shaka Bundy," a/k/a "Sid," a/k/a "Heavy," and YVONNE MILLER, a/k/a "Mom," the defendants, transported cocaine and crack cocaine to and from 2075 Grand Concourse, Bronx, New York.

       h.  On or about February 1, 1993, JOHN CUFF, a/k/a "Jack," a/k/a "Big Cuz," and BERNARD MITCHELL, the defendants, possessed approximately fourteen ounces of cocaine, a loaded firearm and over $5,000 in cash.

       (Title 21, United States Code, Section 846.)

### COUNT FORTY-FIVE

       The Grand Jury further charges:

       96.  On or about November 7, 1995, in the Southern District of New York, PAUL WELLER, a/k/a "Nutsy," the defendant, having been convicted on or about November 30, 1988 of a crime punishable by imprisonment for a term exceeding one year, unlawfully, willfully and knowingly possessed in and affecting interstate and foreign commerce a firearm and ammunition.

       (Title 18, United States Code, Sections 922(g)(1),
924(a)(2), and 2.)

FOREPERSON

MARY JO WHITE
United States Attorney

- 47 -

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

**- v -**

**CLARENCE HEATLEY,  et al.,**

**Defendants.**

### INDICTMENT

S1 96 Cr. 515 (SS)

(Title 18, U.S.C. §§ 1962(c) and (d),
1959(a)(1), 1959(a)(5), 924(c), 922(g),
2 and 3; Title 21 U.S.C. §§ 846 and
848(a), (b), (c) and (e).)

**MARY JO WHITE**

United States Attorney

A TRUE BILL

Foreperson