UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>CLARENCE HEATLEY,<br><br>               Defendant. | 96-CR-515 (LAP)<br><br>15-CV-9534 (LAP)<br><br><u>OPINION AND ORDER</u> |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Clarence Heatley's <u>pro se</u> motion to vacate his sentence pursuant to 28 U.S.C. § 2255, dated May 19, 2020, (<u>see</u> dkt. no. 662 [the "Motion"]), as well as his <u>pro se</u> motion to supplement, (<u>see</u> dkt. no. 668).[1]  For the reasons set forth below, the Court denies Defendant's motions.

## I.   Background

On July 15, 1999, Clarence Heatley and his co-defendants were charged with their involvement in a racketeering enterprise known as the "Preacher Crew," which operated principally in the Bronx during the 1990s. (<u>See</u> dkt. no. 1.)  On December 17, 1997, a grand jury returned a Superseding Indictment, charging Heatley and his co-defendants with engaging in numerous acts of racketeering, including "murder, assault, robbery, extortion, other acts of violence, and narcotics trafficking." (<u>See</u> S11 Superseding

---

[1] Except as otherwise noted, all citations to docket entries shall be understood as references to the criminal case, 96-cr-515.

Indictment, dated Dec. 17, 1997 [dkt. no. 193] ["Indictment"],
¶¶ 1-5; dkt. no. 746-1 ¶¶ 1-5.)

### a. The Plea Agreement

On February 5, 1999, Heatley pleaded guilty to several of the
charges in the Indictment pursuant to a plea agreement. (See dkt.
no. 692-1.) The plea agreement stated that the Government accepted
a guilty plea from Heatley on the following Counts:

- One count of racketeering, in violation of 18 U.S.C. § 1962(c)
  (Count 1);

- One count of racketeering conspiracy, in violation of 18
  U.S.C. § 1962(d) (Count 2);

- Twelve counts of conspiracy to commit murder in aid of
  racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Counts
  3, 5, 8, 10, 12, 14, 17, 22, 24, 28, 31, and 36);

- Thirteen counts of murder and aiding and abetting murder in
  aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1)
  and 2 (Counts 4, 6, 9, 11, 13, 16, 18, 19, 23, 25, 29, 30,
  and 37);

- One count of attempted murder and aiding and abetting
  attempted murder in aid of racketeering, in violation of 18
  U.S.C. §§ 1959(a)(1) and 2 (Count 15);

- One count of assault with a dangerous weapon in aid of
  racketeering, in violation of 18 U.S.C. § 1959(a)(3)
  (Count 7);

- Five counts of Hobbs Act robbery, in violation of 18 U.S.C.
  § 1951 (Counts 40-44);

- Eleven counts of engaging in a continuing criminal
  enterprise, in violation of 21 U.S.C. § 848(a), (b), (c), and
  (e)(1)(A) and 18 U.S.C. § 2 (Counts 46-56);

- Ten counts of use of a firearm in furtherance of murders and conspiracies to commit murder, in violation of 18 U.S.C. §§ 924(c) and 2 (Counts 66, 67, 69-71, 73, 75, 76, 78, and 81);

- One count of use of a firearm in furtherance of attempted murder and conspiracy to commit murder, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 72); and

- One count of use of a firearm in furtherance of assault with a dangerous weapon, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 68).

See id. at 1-5.  Counts 66 through 73, 75, 76, 78, and 81 (the "§ 924(c) counts" or the "§ 924(c) convictions") charged Heatley with the use and carrying of a firearm in relation to a crime of violence. (See Indictment ¶¶ 133-40, 142-43, 145, 148.)

In consideration of Heatley's plea to the above offenses, the Government agreed not to prosecute Heatley further for his participation in the Preacher Crew, to dismiss any open counts against Heatley in the Indictment, and to withdraw its Notice and Amended Notice of Intent to Seek the Death Penalty as to Heatley. (Dkt no. 692-1 at 6.)

**b. Sentencing**

On June 4, 1999, the Court sentenced Heatley to life imprisonment plus 225 years. (Dkt. no. 692-2 at 20:8-12; dkt. no. 461.)  The Court delineated the break-down of the aggregate sentence as:  (a) concurrent life terms of imprisonment on each of Counts 1, 2, 4, 6, 9, 11, 13, 16, 18, 19, 23, 25, 29, 30, 37, and 46-56; (b) ten years imprisonment on each of Counts 3, 5, 8, 10,

12, 14, 15, 17, 22, 24, 28, 31, and 36, to run concurrently with Heatley's life sentences; (c) twenty years imprisonment on each of Counts 7 and 40-44, to run concurrently with Heatley's other sentences; (d) five years imprisonment on Count 66, to run consecutive to Heatley's other sentences; and (e) twenty years on each of Counts 67-73, 75, 76, 78, and 81, to run consecutive to Heatley's other sentences. (Dkt. no. 692-2 at 20:8-12; dkt. no. 461 at Rider B.)

### c. Post-Sentencing Proceedings

On May 30, 2000, Heatley filed his first motion to vacate under 28 U.S.C. § 2255, (see Heatley v. United States, 00-cv-4313, dkt. no. 8), in which Heatley argued that the Indictment to which he entered his guilty plea was deficient, that his plea and conviction violated due process, and that he was denied effective assistance of counsel. See Heatley v. United States, 2002 WL 1836753, at *3 (S.D.N.Y. Aug. 12, 2002). The Court denied Heatley's motion on August 12, 2002. See id. at *6. Heatley appealed on August 27, 2002, which appeal the Court of Appeals dismissed on October 15, 2022. (See dkt. nos. 550, 558.)

Heatley then filed a motion to reinstate his right to direct appeal under 28 U.S.C. § 2255 in September 2015, (see dkt. no. 604), and filed a second motion for leave to file a successive motion to vacate under 28 U.S.C. § 2255 in December 2015, (see dkt. no. 605.) The Court of Appeals denied Heatley's motions on

May 26, 2016.  (See dkt. no. 611.)  In December 2015, Heatley also
filed a motion pursuant to Federal Rule of Civil Procedure 60(b)
to set aside the Court's 2002 order denying his 2000 motion made
pursuant to § 2255.  (See dkt. no. 608 [the "Motion for
Reconsideration"].)  On May 1, 2018, the Court denied Heatley's
Motion for Reconsideration.  (See dkt. no. 628.)  On December 9,
2019, Heatley moved for a reduction in sentence pursuant to the
First Step Act of 2018, (see dkt. no. 654), which the Court denied
on June 10, 2021, (see dkt. no. 721).

### d. Petitioner's Section 2255 Motion

On June 11, 2020, Heatley filed his pro se Motion, pursuant
to § 2255, to vacate his § 924(c) convictions.  (See Motion, dkt.
no. 662.)  On August 26, 2020, the Court of Appeals granted Heatley
leave to file his Motion.  (See dkt. no. 671.)  The Government
filed its initial memorandum of law in opposition to Heatley's
Motion on December 1, 2020.  (See dkt. no. 692 ["Gov't Br."].)
After the Court appointed counsel to represent Heatley with respect
to his Motion, counsel for Heatley filed a supplemental brief in
support of Heatley's Motion on December 16, 2021.  (See Heatley v.
United States, 15-cv-9534, dkt. no. 35 ["Def. Br."].)  The
Government filed its memorandum of law in opposition to Heatley's
counseled brief on January 24, 2022.  (See dkt. no. 733.)

## II. **Applicable Legal Standards**

### a. **Motion to Vacate**

Under 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds, inter alia, that the "sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is only available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotations omitted).

Section 2255(f)(3) also requires that a motion be filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court[.]" 28 U.S.C. § 2255(f)(3).

### b. **Procedural Default**

Under the procedural default doctrine, a guilty plea may not be collaterally attacked unless first challenged on direct review; if a defendant fails to do so, the § 2255 claim is considered procedurally defaulted. See Bousley v. United States, 523 U.S. 614, 621 (1998). The purpose of this doctrine is to promote the "important interest in the finality of judgments." Massaro v. United States, 538 U.S. 500, 504 (2003).

A defendant may overcome such a procedural default by demonstrating either (1) "'cause' and actual 'prejudice,'" or (2) actual innocence. See Bousley, 523 U.S. at 615 (quoting Murray v. Carrier, 477 U.S. 478, 489, 496 (1986)). A court may find "cause" where a claim "is so novel that its legal basis [was] not reasonably available to counsel" at the time of direct review. Id. (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). That scenario can occur when the Supreme Court overturns "a longstanding and widespread practice to which th[e] Court ha[d] not spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved." See Reed, 468 U.S. at 17 (quoting United States v. Johnson, 457 U.S. 537, 551 (1982)).

Actual prejudice means that the error alleged in the § 2255 motion "worked to [a defendant's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray, 477 U.S. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). A mere "possibility of prejudice" is insufficient. Frady, 456 U.S. at 170. When challenging a guilty plea, a defendant must show that the error was a "fundamental defect which inherently result[ed] in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Williams v. United States, 2017 WL 532469, at *3 (S.D.N.Y. Feb. 3, 2017) (internal quotation omitted). Where a § 924(c) conviction is based upon a

guilty plea, prejudice has been defined to require a defendant to "show that there is a reasonable probability that, but for the error, he would not have pleaded guilty." United States v. Dussard, 967 F.3d 149, 156 (2d Cir. 2020) (reviewing the validity of § 924(c) predicate offenses post-United States v. Davis, 588 U.S. 445 (2019), on direct appeal).

Actual innocence means "factual innocence[.]" Bousley, 523 U.S. at 623. "[M]ere legal insufficiency" is not enough to meet this standard. Id. For a conviction stemming from a plea agreement where the government dismissed more serious charges during plea bargaining, a defendant's "showing of actual innocence must also extend to those charges." Id. at 624. To meet this standard, a defendant "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995).

### c. Concurrent Sentence Doctrine

The concurrent sentence doctrine is available in the context of a § 2255 challenge. See Kassir v. United States, 3 F.4th 556, 561 (2d Cir. 2021). The concurrent sentence doctrine "allows courts, in their discretion, to avoid reaching the merits of a claim altogether in the presence of identical concurrent sentences since a ruling in the defendant's favor would not reduce the time he is required to serve or otherwise prejudice him in any way." Id. (internal quotations and citations omitted).

Although in Kassir v. United States the Court of Appeals rejected the Government's argument that § 2255 relief is never cognizable when the Petitioner is serving multiple life sentences, it held that "absent a showing of prejudice with respect to custody, a court proceeding under § 2255 retains discretion to decline to consider such a challenge." Id. at 567. The court, therefore, using its discretion, refused to reach the merits of Petitioner's claim, as the Petitioner would be serving two unchallenged life sentences regardless, and, as such, "[n]o matter the success of his argument" the court could not "shorten the time he will remain in prison." Id. at 564, 567; see also United States v. Rodriguez, 2022 WL 158685, at *2 (S.D.N.Y. Jan. 18, 2022) (applying the reasoning of Kassir when declining to hear a § 2255 claim).

**d. Section 924(c)**

Section 924(c) makes it a crime to possess a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). The statute provides two definitions of a "crime of violence." The first definition is known as the "force clause" (or "elements clause"), which defines a crime of violence as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" Id. at § 924(c)(3)(A). The second definition, known as the "risk of force clause" (or the "residual

clause"), defines a crime of violence as a felony that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Id. at § 924(c)(3)(B).

Following United States v. Davis, the residual clause no longer supports a § 924(c) conviction because it is unconstitutionally vague. See 588 U.S. 445, 470 (2018). The decision in Davis followed recent prior decisions in which the Supreme Court held that residual clauses in other criminal statutes were unconstitutionally vague. See Davis, 588 U.S. at 451-53 (citing Johnson v. United States, 576 U.S. 591 (2015), and Sessions v. Dimaya, 584 U.S. 148 (2018)). In Johnson v. United States, for instance, the Supreme Court held that the residual clause of the Armed Career Criminal Act, which defined "violent felon[ies]" as offenses that posed a "serious potential risk of physical injury to another," was unconstitutionally vague because of the imprecision it required from courts tasked with evaluating its terms. 576 U.S. 591, 595-98 (2015).

Following the Supreme Court's decision in Davis, the Court of Appeals has held that "a conspiracy to commit a violent felony," including even those that result in murder, "could not alone support a conviction under the . . . 'elements clause' of § 924(c)(3)." United States v. Heyward, 3 F.4th 75, 81 (2d Cir. 2021). While conspiracy to commit murder is no longer

categorically a crime of violence and, therefore, not a valid predicate for a 924(c) conviction, "[i]t is well established that murder remains a crime of violence under [§ 924(c)] post-Davis." United States v. Batista, 2022 WL 5187458, at *2 (S.D.N.Y. Oct. 5, 2022); Stone v. United States, 37 F.4th 825, 832 (2d Cir. 2022), cert. denied, 143 S. Ct. 396 (U.S. Oct. 31, 2022) ("This Court, sitting en banc in United States v. Scott, rejected this very argument.").

Following the invalidation of the residual clause, courts deciding motions to vacate a § 924(c) conviction must determine whether the conviction was predicated on a felony offense that meets the definition of a "crime of violence" under the elements clause. See United States v. Pastore, 83 F. 4th 113, 118-19 (2d Cir. 2023). Specifically, courts must apply the "categorical" approach to determine if a felony offense may serve as a predicate offense for conviction under the elements clause. See United States v. Taylor, 596 U.S. 845, 850 (2022); see also United States v. Hendricks, 921 F.3d 320, 327 (2d Cir. 2019) ("To determine whether a crime is a crime of violence under § 924(c)(3)(A), we apply the so-called categorical approach." (internal quotations and citations omitted)). Under this approach, courts do not examine the underlying facts or conduct of a defendant's offense. See Pastore, 83 F.4th at 118. Instead, courts must identify "the minimum conduct necessary for a conviction of [a] predicate

offense" and then must determine "whether such conduct amounts to a crime of violence" under the elements clause. See <u>United States v. Hill</u>, 890 F.3d 51, 56 (2d Cir. 2018).

### e. 924(c) Conviction Based on One Valid Predicate and One Invalid Predicate

As a result of <u>Davis</u>, a subsequent issue has arisen: whether a defendant is prejudiced when his or her § 924(c) conviction could be predicated on either or both of two underlying crimes, but only one remains a constitutionally valid predicate.

The Court of Appeals' recent decision in <u>Stone v. United States</u>, 37 F.4th 825 (2d Cir. 2022), guides this analysis. Under <u>Stone</u>, when a defendant challenges his § 924(c) conviction,

> [if the] jury's finding of guilt [wa]s based on two predicates, only one of which can lawfully sustain guilt, [the Court] will find the error harmless when the jury would have found the essential elements of guilt on the alternative charged predicate that would sustain a lawful conviction beyond a reasonable doubt.

<u>Stone</u>, 37 F.4th at 831 (internal quotations and citations omitted).

The petitioner in <u>Stone</u> had been charged with three offenses: (1) conspiracy to commit second degree murder in aid of racketeering, (2) second degree murder in aid of racketeering, and (3) a § 924(c) charge predicated on either or both of the first two counts. See <u>id.</u> at 826. Rejecting petitioner's argument that it should apply the categorical approach, the Court of Appeals instead reviewed the whole record and asked whether a rational jury would have arrived at the same verdict for the § 924(c) count

based only on the commission of the still-constitutional predicate offense. See id. at 831. Looking at the whole record, the Court of Appeals found "the error of instructing the jury on the now-invalid predicate was harmless to Stone because the jury found facts 'satisfying the essential elements of guilt' on the valid predicate of substantive murder in aid of racketeering 'that would [have] sustain[ed] a lawful conviction' on the firearm offense." Id. at 832 (quoting United States v. Laurent, 33 F.4th 63, 86 (2d Cir. 2022)).

## III. Discussion

Heatley challenges his § 924(c) convictions on the grounds that the predicate offenses underlying those convictions—conspiracy to murder, murder in the aid of racketeering, attempted murder, and assault with a dangerous weapon—cannot constitute "crimes of violence" after the Supreme Court ruled in Davis that the residual clause is unconstitutionally vague. (See Motion at 2.) He also argues, through counsel, that the predicate crimes underlying his § 924(c) convictions do not satisfy the definition of "crimes of violence" under the elements clause, which is the only manner in which they could constitute crimes of violence after the Supreme Court's invalidation of the residual clause in Davis. (See Def. Br. at 4.) Specifically, Heatley argues that the record lacked sufficient evidence to satisfy the elements of the predicate crimes underlying his § 924(c) convictions. (See id. at 7.)

The parties correctly agree that conspiracy to murder is not, itself, a "crime of violence." See United States v. Martinez, 991 F.3d 347, 354 (2d Cir. 2021) (relying on Davis to find that conspiracy offenses are not categorically crimes of violence under § 924(c)); (see also Gov't Br. at 12 ("Following Davis . . . certain offenses, including conspiracy to murder, do not qualify as crimes of violence[.]"); Def. Br. at 2 (arguing "conspiracy offenses [] are no longer valid predicate offenses under Johnson/Davis")). However, the Government contends that the offenses of murder, attempted murder, and assault to which Heatley pleaded guilty remain valid predicate offenses to sustain Heatley's § 924(c) convictions under the still-valid elements clause. (See Gov't Br. at 12-15.) Heatley, on the other hand, argues that there was insufficient evidence to support the conclusion that those predicate offenses categorically involved the use of force. (See Def. Br. at 4.) Additionally, the Government argues that Heatley's motion must fail because he procedurally defaulted on his challenge by failing to advance it on direct appeal and fails to show cause or actual prejudice for his failure or his actual innocence. (See Gov't Br. at 16.)

The Court finds that Heatley's Motion fails because he procedurally defaulted on his current challenge to the § 924(c) convictions and, alternatively, his arguments fail on the merits.

**a. Jurisdiction**

As a threshold issue, the Court of Appeals instructed the Court to "determine[e] whether the claim in [Heatley's] § 2255 motion . . . satisfies the threshold requirements governing successive § 2255 motions" before it may proceed to the merits of Heatley's Motion. (See dkt. no. 671 at 2.) The Court finds that it does.

The Court of Appeals held in Massey v. United States that, after the Court of Appeals grants a petitioner leave to file a successive § 2255 motion, a district court "need not reach the merits" of the successive § 2255 motion if it "fails to satisfy [certain] threshold requirements." 895 F.3d 248, 251 (2d Cir. 2018). Those threshold requirements are found in 28 U.S.C. §§ 2244(a), (b)(3)-(4), 2255(h). See id. In particular, the district court must determine whether the Court of Appeals has authorized it to consider the § 2255 motion, see 28 U.S.C. § 2244(b)(3), and if the § 2255 motion puts forth either newly discovered evidence that would materially alter the petitioner's conviction or a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," see id. § 2255(h)(1)-(2). In addition, the district court need not consider the § 2255 motion if a "judge or court of the United States" has already determined the legality of the prisoner's detention on a prior application for a writ of

habeas corpus, _except_ as provided in" § 2255.    _Id._ § 2244(a)
(emphasis added).

Heatley's Motion satisfies each of these requirements.    The
Court of Appeals has specifically authorized the Court to
adjudicate Heatley's Motion, (_see_ dkt. no. 671), there is no
indication that any federal court has already determined a prior
application for a writ of habeas corpus except on prior motions
made pursuant to § 2255, and Heatley bases his Motion primarily on
recent Supreme Court precedent that has rendered § 924(c)'s
residual clause unconstitutionally vague and insufficient to
support convictions under the statute, including convictions for
conspiracy offenses to which Heatley pleaded guilty.    (_See_ Motion
at 1; dkt. no. 668 at 2-3 (citing _United States v. Davis_, 588 U.S.
445 (2019)); Def. Br. at 3-7.)    The Supreme Court's decisions in
_Davis_ and _Johnson_ apply retroactively to petitioners who seek
collateral review of their convictions.    _See_ _Hall v. United States_,
58 F.4th 55, 62 (2d Cir. 2023) (noting _Davis_'s retroactive
application to collateral review); _Welch v. United States_, 578
U.S. 120, 136 (2016) (noting _Johnson_'s retroactive application to
collateral review).    Accordingly, the Court may consider the merits
of Heatley's Motion.

**b. Procedural Default**

    i.  Cause

Heatley argues that he has established cause for failing to raise the arguments in his Motion on direct appeal because the basis for his present challenge to § 924(c) convictions was unavailable to him until "Davis changed the law" in 2019.  (See Def. Br. at 8 (quoting Fernandez v. United States, 2021 WL 5113406, at *5 (S.D.N.Y. Nov. 3, 2021)).)  The Government argues that Heatley has no cause for his prior failure to raise the challenge he now makes under Davis because litigants had raised vagueness challenges to § 924(c) by the time of his plea and sentencing. (See Gov't Br. at 18.)

The Court finds that Heatley has established cause because his § 924(c) challenge was not "reasonably available" at the time of his conviction. Beginning with Johnson in 2015, the Supreme Court invalidated three similarly worded residual clauses in criminal statutes as unconstitutionally vague, including the "residual clause" of § 924(c). See Johnson, 576 U.S. at 597; Dimaya, 584 U.S. at 161-62; Davis, 588 U.S. at 470. In 2016, the Supreme Court held that Johnson applies retroactively to cases on collateral review. Welch, 578 U.S. at 130.

Here, Heatley's prior failure to raise vagueness as a challenge to his § 924(c) convictions occurred nearly two decades before the Supreme Court decided Johnson, Welch, and Davis. Thus,

the arguments challenging "residual clauses" in Johnson, Dimaya, and Davis were unheard of at the time of Heatley's conviction. See Vilar v. United States, 2020 WL 85505, at *2 (S.D.N.Y. Jan. 3, 2020) ("In the absence of any indication that Davis (or its predecessors Sessions v. Dimaya, or Johnson v. United States) was even close to anybody's radar screen in 1997 or 1998, I will assume that the claim here is so novel that it was not reasonably available to counsel at the time." (citations omitted)). Accordingly, when he was convicted, Heatley did not have a reasonably available legal basis to challenge the unconstitutional nature of § 924(c)'s residual clause. See Aquino v. United States, 2020 WL 1847783, at *2 (S.D.N.Y. Apr. 13, 2020) (finding that petitioner showed cause where his direct appeal occurred in 2015, prior to Johnson, at a time when "Second Circuit caselaw . . . foreclosed his § 924(c) argument" (quoting Camacho v. United States, 2019 WL 3838395, at *2 (S.D.N.Y. Aug. 15, 2019))); Camacho, 2019 WL 3838395, at *2 (finding that petitioner had cause for his failure to raise his unconstitutional vagueness argument where he was sentenced in 2014 before the Supreme Court had granted certiorari in Johnson); Clayton v. United States, 456 F. Supp. 3d 575, 578 (S.D.N.Y. 2020) (finding that petitioner showed cause because he was sentenced in 2011, before Johnson and Davis, when Second Circuit case law foreclosed his challenge to

the validity of his Hobbs Act robbery conspiracy conviction serving as a predicate crime of violence under § 924(c)).

To support its arguments that Heatley cannot show cause, the Government cites to two pre-1999 cases that raised vagueness challenges to § 924(c): United States v. Santos, 1992 WL 232057 (S.D.N.Y. Sept. 2, 1992), and United States v. Magee, 21 F.3d 1108, 1994 WL 171513 (5th Cir. Apr. 22, 1994) (unpublished decision). (See Gov't Br. at 18.) Santos and Magee are distinguishable because they challenged the use of the terms "firearm silencer" and "firearm muffler," and "drug trafficking," respectively. See Santos, 1992 WL 232057, at *8; Magee, 1994 WL 171513, at *4-5. Unlike Johnson and Davis, Santos and Magee did not involve a constitutional vagueness challenge to the entire residual clause of a criminal statute.

The Government also cites to United States v. Bennett, 165 F.3d 36, 1998 WL 781231 (9th Cir. Nov. 9, 1998) (unpublished decision), for the proposition that other litigants had brought vagueness challenges to the "crime of violence" definition of § 924(c) before 1999. (See Gov't Br. at 18.) Bennett, however, was a Ninth Circuit decision in which the court held that "firearm silencer" was not too unconstitutionally vague to support a finding that the defendant's use of a silencer constituted a crime of violence. See Bennett, 1998 WL 781231, at *1. As with Magee and Santos, the case did not involve a challenge to an entire residual

clause, which challenges the Supreme Court only began to recognize
in 2015. Thus, the Court finds that the argument the petitioner
put forth in Bennett did not provide Heatley a reasonably available
legal basis for him to challenge his § 924(c) convictions.

### ii. Actual Prejudice

Heatley asserts that he was actually prejudiced by his guilty
plea to the § 924(c) convictions because the evidence to support
the predicate offenses that underlie those convictions is legally
insufficient to demonstrate that those predicate crimes were
"crimes of violence." (See Def. Br. at 8.) As a threshold matter,
§ 924(c) "does not require the defendant to be convicted of (or
even charged with) the predicate crime, so long as there is legally
sufficient proof that the predicate crime was, in fact, committed."
Dussard, 967 F.3d at 157 (quoting Johnson v. United States, 779
F.3d 125, 129-30 (2d Cir. 2015)).

In United v. Dussard, the Court of Appeals reviewed the § 2255
motion of a defendant who had pleaded guilty to a § 924(c) count
predicated on either of two bases, one of which was an allegation
of the defendant's participation in a crime that subsequently
became an invalid crime of violence to support a § 924(c)
conviction after the Supreme Court's decision in Davis. See id.
at 156-58. Nevertheless, the Court of Appeals denied the
defendant's challenge to his § 924(c) conviction, finding that the
"description of the evidence . . . provided an ample predicate for

a [§ 924(c)] conviction . . . ." See id. at 157. Based on the record, the Dussard court found that the defendant could have been convicted of the still-valid predicate offense and that he "demonstrated [a] willingness to plead guilty to [the § 924(c) charge] in order to gain dismissal of [the charged predicate offense] and avoid its mandatory minimum 10-year term of imprisonment[.]" See id. at 158-59. Thus, the court held that the defendant failed to "show[] any reasonable probability that he would not have pleaded guilty" to the § 924(c) count. Id. at 159.

The Court considers the entire record to determine if Heatley can establish actual prejudice. See id. at 156-58. As in Dussard, the record indicates that there was evidence to convict Heatley of the predicate offenses referenced in the § 924(c) counts that remain valid after Davis and Johnson. That is, even though the other predicate offenses underlying Heatley's § 924(c) convictions—the ten counts of conspiracy to murder—are no longer valid predicates to convict a defendant under § 924(c), there was sufficient evidence that Heatley was guilty of the other predicate offenses that underlie his § 924(c) convictions and remain valid predicates under the current case law.

The transcript from Heatley's plea hearing provides sufficient evidence regarding those still-valid offenses—the murders referenced in Counts 66-67, 69-71, 73, 75, 76, 78, and 81; the attempted murder referenced in Count 72; and the assault

referenced in Count 68—to establish that each § 924(c) conviction was predicated on a crime of violence under the statute's elements clause. See United States v. Bido, 2021 WL 1141319, at *3 (S.D.N.Y. Mar. 23, 2021) (rejecting defendant's claim of prejudice where a review of his plea allocution revealed that he admitted to conduct that would have constituted a still-valid predicate for a § 924(c) conviction); (see also Transcript of Plea Hearing, February 5, 1999, dkt. no. 424 ["Plea Tr."].).

The Court will go through each of the admissions Heatley made that establish his guilt for the predicate crimes of violence. First, Heatley admitted to directing Preacher Crew member Derrick Hailstock to kill Tommy Jones, pursuant to which order Hailstock shot and killed Jones in the Bronx. (See Plea Tr. at 24:24-26:16.) He then admitted to directing members of the Preacher Crew to murder Jose Rodriguez, upon which directions the members shot and killed Rodriguez. (See id. at 26:18-29:30.) In that same colloquy, Heatley admitted that he understood at the time he ordered the murder of Jose Rodriguez that it was a "real possibility" that others in the vicinity of Jose Rodriguez would be injured as a result of the murder, which is in fact what happened to Anthony Rodriguez when he was shot and wounded in the course of the shooting of Jose Rodriguez. (See id.) Heatley admitted that he "told Ronnie Jackson" to murder Mark Luker, which Jackson did when he shot Luker in Manhattan in 1993. (See id. at 30:10-14,

31:6-19.)  He admitted that he directed and assigned a member of the Preacher Crew to murder Milton Williams, which the crew member accomplished by shooting Williams on Heatley's orders in 1993. (See id. at 32:4-33:13.)  Heatley admitted that he ordered a Preacher Crew member to kill Charles Whittaker, which the crew member did when he shot Whittaker in the Bronx in 1993.  (See id. at 32:20-35:6.)  He further admitted that he "accepted a contract from Derrick Hailstock to have Stanley Campbell killed," directed people to kill Campbell, and that, pursuant to Heatley's orders, Campbell was shot and killed in 1993.  (See id. at 35:7-36:8.)[2] Heatley admitted that he had "agreed with Mr. Hailstock" and directed crew members to shoot Hayward Shine, pursuant to which direction crew members shot and killed Shine in 1994.  (See id. at 38:9-39:13.)  He admitted that he "directed [Anthony Boatwright] to be killed," pursuant to which direction Boatwright was shot and murdered in the Bronx in 1994.  (See id. at 40:2-11, 41:3-17.)  He admitted that he "directed a person" to kill James Brunson, pursuant to which direction Brunson was shot in Manhattan in 1994.  (See id. at 42:7-43:15.)  Heatley acknowledged at his

---

[2] The predicate offense underlying Heatley's conviction on Count 72 was the attempted murder of Stanley Campbell, as charged in Count 15 of the Indictment.  (See Indictment ¶¶ 19(b), 73, 139.) Therefore, Heatley's admission that he ordered individuals to murder Campbell serves as evidence of his guilt on both the charge for Campbell's murder and the charge for attempted murder, because each was performed pursuant to Heatley's direction.

plea hearing that at the time he ordered Brunson's murder, he was aware that it was possible another individual could be killed as a result of the shooting. (See id. at 43:4-7.) And, as a result of Heatley's orders, Alex Brown was indeed shot and killed during the shooting of James Brunson. (See id. at 42:7-43:7.) Finally, Heatley admitted that he directed Steven Fairley, a Preacher Crew member, to "listen to" Harold Taylor, another crew member, about what to do with respect to Robert Riley, which direction he understood at the time might encompass murdering Riley. (See id. at 44:10-45:12.) And, as a result of Heatley's direction, Fairley shot and killed Riley in the Bronx in 1995. (See id. at 45:13-23.)

The Indictment charged Heatley with the murders of Tommy Jones, Jose Rodriguez, Mark Luker, Milton Williams, Charles Whittaker, Stanley Campbell, Hayward Shine, Anthony Boatwright, James Brunson, Alex Brown, and Robert Riley; with the attempted murder of Stanley Campbell, and with the assault with a dangerous weapon of Anthony Rodriguez. (See, e.g., Indictment ¶¶ 50-75, 88-93, 100-03, 116-17.) Because the record provides evidence—namely, Heatley's specific admissions—to support convictions for murder, attempted murder, and assault that would serve as valid predicate offenses under the elements clause, the Court finds that there is no reasonable probability that Heatley would not have pleaded guilty to the still-valid predicate offenses underlying the

§ 924(c) counts. See Bido, 2021 WL 1141319, at *3.  Instead, the evidence provides "legally sufficient proof that the predicate crime[s] w[ere], in fact, committed." Dussard, 967 F.3d at 157 (internal quotations and citations omitted).  Based on this legal sufficiency, there is no "reasonable probability that [Heatley] would not have pleaded guilty" to the § 924(c) counts based on those underlying predicate offenses. Id. at 159.  Accordingly, Heatley fails to establish actual prejudice. See id. at 156–59.

### iii.    Heatley Does Not Argue Actual Innocence

Because Heatley fails to establish "actual prejudice," he can only overcome procedural default by proving "actual innocence." See Bousley, 523 U.S. at 622–23. However, he fails to do so by failing to allege actual innocence in his § 2255 motion. (See Def. Br.) Even if Heatley had argued he was actually innocent, the conduct he described in his plea colloquy would preclude him from establishing it. (See Plea Tr. at 24:24–45:23.) (Heatley stated that he directed the shooting that injured Anthony Rodriguez as well as the murders of Tommy Jones, Jose Rodriguez, Mark Luker, Milton Williams, Charles Whittaker, Stanley Campbell, Hayward Shine, Anthony Boatwright, James Brunson, Alex Brown, and Robert Riley).)

### c. Merits

Even assuming, arguendo, that Heatley overcame a procedural default, the Court finds that his motion fails on the merits.

i.  Murder and Attempted Murder as "Crimes of Violence"

As noted above, eleven of the twelve § 924(c) convictions are predicated on either (1) conspiracy to murder and (2) murder in aid of racketeering, or (1) conspiracy to murder and (2) attempted murder. If either one of those offenses is a "crime of violence" under § 924(c)'s "elements clause," Heatley's motion fails with respect to those eleven counts. See Pastore, 83 F.4th at 118-22 (upholding a § 924(c) conviction that was based, in part, on one valid predicate offense—attempted murder—even though three other conspiracy-based offenses no longer served as valid predicate offenses after Davis).  Because conspiracy to murder no longer constitutes a valid "crime of violence," the question becomes whether murder in aid of racketeering or attempted murder in aid of racketeering are "crimes of violence." See id. at 119. To answer this question, the Court applies the categorical approach and asks whether the minimum conduct necessary to commit murder or attempted murder "necessarily involves violence."  Hendricks, 921 F.3d at 327; see also Pastore, 83 F.4th at 119-20; Stone, 37 F.4th at 828-30.

Heatley pleaded guilty to using and carrying a firearm in connection with offenses that constitute "crimes of violence." (See dkt. no. 692-1 at 1-6.) In Heatley's case, the offenses underlying his plea on eleven of those counts—murder and attempted murder—are offenses under New York penal law. (See Indictment

¶¶ 50-55, 58-75, 88-93, 100-03, 116-17) (Heatley unlawfully, willfully, and knowingly murdered and aided and abetted the murders of Tommy Jones, Jose Rodriguez, Mark Luker, Milton Williams, Charles Whittaker, Stanley Campbell, Hayward Shine, Anthony Boatwright, James Brunson, Alex Brown, and Robert Riley, and the attempted murder of Stanley Campbell, each in violation of New York State Penal Law)). Thus, this Court must determine whether murder and attempted murder—as defined by New York State Penal Law—categorically constitute "crimes of violence" under § 924(c)'s elements clause. See Pastore, 83 F.4th at 118-22.

New York's murder statute has distinct subsections with different elements. See N.Y. Penal Law § 125.25. Thus, the Court must look at the Indictment to determine "what crime, with what elements," to which Heatley pleaded guilty. See Gray v. United States, 980 F.3d 264, 266 (2d. Cir. 2020) (quoting Mathis v. United States, 579 U.S. 500, 505-06 (2016)) (noting that if the statute of an offense is divisible, courts may look at documents from the record to determine the specific crime and elements charged); see also Pastore, 83 F.4th at 118-19 (noting that a statute is divisible when one or more of its elements are set out in the alternative).

Counts 66, 67, 69 through 71, 73, 75, 76, 78, and 81 reference underlying charges alleging that Heatley "intentionally[] and knowingly" murdered and aided and abetted the murder of several of

the Preacher Crew's victims. (See Indictment ¶¶ 51, 55, 61, 65, 69, 75, 89, 93, 101-03, 117.) This Court held in Jackson v. United States that the underlying offense for these counts—intentional murder in the second degree, governed by N.Y. Penal Law § 125.25(1)—is categorically a crime of violence that serves as a valid predicate for a § 924(c) conviction under the elements clause. 2022 WL 976358, at *8-9 (S.D.N.Y. Mar. 31, 2022); see also Stone, 37 F.4th at 833 ("[S]econd-degree murder [under N.Y. Penal Law § 125.25(1)] is categorically a crime of violence under § 924(c)."). Count 72 references an underlying charge alleging that Heatley "intentionally[] and knowingly attempted to murder" and aided and abetted the attempted murder of Stanley Campbell. (See Indictment ¶¶ 72-73, 139.) The Court of Appeals had made clear that "there can be no doubt that attempt to commit second-degree murder under New York law is itself categorically a crime of violence." Pastore, 83 F.4th at 120. Accordingly, New York State Penal Law categorically defines murder and attempted murder as "crimes of violence" under § 924(c)'s elements clause.

Heatley argues that intentional murder and attempted murder are not categorically "crimes of violence" because, under New York's penal statute, they can be committed not only intentionally, but through the defendant's depraved indifference and under the felony murder rule as well. (See Def. Br. at 6.) He also contends that his plea allocution provides legally insufficient evidence to

28

satisfy the elements of certain of the underlying predicate offenses, as is necessary to support a § 924(c) conviction under the elements clause. (See id.)

This Court is not persuaded by Heatley's argument. In United States v. Pastore, the Court of Appeals held that "[t]here is no question that intentionally causing the death of another person involves the use of force." 83 F.4th at 120 (citing United States v. Castleman, 572 U.S. 157, 169 (2014)). Because of this, the court held, crimes involving homicide, including manslaughter and attempted murder, are categorically crimes of violence under the elements clause. See id. (collecting cases). Applying this principle, the court found that the defendant's conviction for attempted murder in aid of racketeering provided a sufficient basis to support his conviction under § 924(c). See id. at 120-21.

The same conclusion is warranted here. Heatley was charged with, and admitted to, intentionally and knowingly murdering ten victims and intentionally and knowingly attempting another murder. That he pleaded guilty to intentionally murdering and attempting to murder these victims itself establishes that he was convicted of valid "crimes of violence" underlying the § 924(c) convictions for those offenses. See id.; Jackson, 2022 WL 976358, at *8; Stone, 37 F.4th at 833.

And, even if a defendant may be convicted of murder under New York penal law based on depraved indifference or the felony murder

29

rule, courts in the Second Circuit have already rejected the idea that convictions for intentional murder cannot serve as valid predicates for § 924(c) convictions on this basis.  See United States v. Davis, 74 F.4th 50, 54–56 (2d Cir. 2023) (finding that conviction for murder in aid of racketeering was a crime of violence supporting a § 924(c) conviction where the murder conviction was based on jury instruction that the murder was intentional, even though defendant was also charged with depraved indifference murder); Moore v. United States, 2021 WL 5264270, at *1–2 (S.D.N.Y. Nov. 12, 2021) (rejecting defendant's argument that felony murder rule could have supported predicate murder conviction, and was not a crime of violence, since there was no contention he was convicted "for behavior that was anything other than intentional murder").  As was the case in each of those cases, Heatley admitted to intentionally and knowingly ordering others to murder his victims.  That suffices to establish that he committed

offenses that are categorical crimes of violence to support his § 924(c) convictions. See Pastore, 83 F.4th at 120-21.[3]

It is of no moment that Heatley only specified at his plea hearing that he told his associate, Steven Fairley, to follow the orders of Harold Taylor, another member of the Preacher Crew, with respect to the murder of Robert Riley. (See Def. Br. at 7.) In the first instance, the Court reiterates that Heatley was charged with and admitted to intentionally killing Riley, which suffices to establish that, in so doing, he committed a crime of violence. See Pastore, 83 F.4th at 120-21. Moreover, Heatley admitted that he understood at the time that Taylor's orders might encompass murdering Riley. (See Plea Tr.at 44:10-45:12.) This admission would, at the very least, support a finding that Heatley would be guilty of first-degree manslaughter under New York Penal Law § 125.20(1). As the Court of Appeals has held, first-degree manslaughter "is a categorically violent crime because its

---

[3] Although Heatley argues that the murder of Alex Brown cannot serve as a predicate offense for his conviction on Count 78 because Brown was "murdered in the course of another murder" and Heatley did not intend to murder Brown, (see Def. Br. at 7), his argument is irrelevant. Heatley was charged with and pleaded guilty to ordering the shooting and killing of James Brunson, (see Indictment ¶¶ 100-01; Plea Tr. at 42:7-43:3), during which shooting Alex Brown was also killed. The murder count for the killing of James Brunson—which was charged as a separate count from the killing of Alex Brown—serves as a separate, valid predicate offense for Heatley's conviction on Count 78, even if the murder of Alex Brown did not. Accordingly, Heatley's conviction on Count 78 remains valid for the reasons described above.

elements necessarily require [the] defendant's knowing and intentional use of [] violent force[.]" United States v. Scott, 990 F.3d 94, 111 (2d Cir. 2021). As the court specified, the elements of manslaughter include the intent to cause serious physical injury, "which creates a substantial risk of death[.]" Id. at 105. As Heatley's allocution makes clear, he admitted that, when he directed Steven Fairley to listen to Harold Taylor's orders—even if they included orders to kill—he was giving orders that he knew and intended carried a substantial risk that Robert Riley would die. Therefore, the murder of Robert Riley constitutes a predicate offense that is categorically a crime of violence.

Regarding attempted murder, the argument that it is not a valid "crime of violence" has been specifically considered and rejected by the Court of Appeals. Recently, the Court of Appeals held that "a conviction for attempted murder categorically means that the defendant took a substantial step toward the use of physical force" and that attempted murder "cannot be committed through the mere threat of force[.]" Pastore, 83 F.4th at 121 (internal quotations omitted); see also United States v. Sierra, 782 F. App'x 16, 20 (2d Cir. 2019) (summary order) (it is "self-evident that under New York law attempted murder is a crime unmistakably involving an attempted use of physical force") (quotations omitted). No different conclusion is warranted by the possibility of attempted murder being committed by omission or

recklessness, as the Court of Appeals has expressly held that a defendant can use force "as much by omission as by commission." Scott, 990 F.3d at 100-01 (holding a first-degree manslaughter offense constitutes a crime of violence even by omission and noting that "[s]ix of our sister circuits agree that crimes intentionally causing physical injury are categorically violent even if committed by omission").

### ii. Assault With a Dangerous Weapon as a "Crime of Violence"

The assault with a dangerous weapon of Anthony Rodriguez, which served as the predicate for Heatley's § 924(c) conviction on Count 68 of the Indictment and the lone predicate offense that did not involve murder or attempted murder, is also an offense under New York penal law.  The Court finds that, like the eleven other predicate offenses, under New York law, the assault charge constitutes a categorical crime of violence under the elements clause.

The Court of Appeals recently reviewed a defendant's appeal of his conviction under § 924(c) based on the defendant's contention that the assault charge that served as the predicate offense for the conviction did not constitute a crime of violence. See United States v. Morris, 61 F.4th 311, 317-20 (2d Cir. 2023). The court concluded that the defendant's assault conviction could have violated either of two statutes under New York Penal Law:

(1) first degree assault with a deadly weapon under New York Penal Law § 120.10(1), or (2) second degree assault with a deadly weapon under New York Penal Law § 120.05(2). See id. at 319. Under either statute, the court held, the defendant's assault conviction constituted a crime of violence to sustain a § 924(c) conviction. See id. at 319-20. Similarly, in United States v. Laurent, the Court of Appeals held that assault with a deadly weapon under § 120.05(2) necessarily constituted a crime of violence because it "necessarily and categorically requires the use of physical force[.]" 33 F.4th 63, 92 (2d Cir. 2022) (internal quotation marks omitted). Accordingly, there can be no question that Count 7 of the Indictment, which charged Heatley with assault with a dangerous weapon and to which Heatley pleaded guilty, constitutes a categorical crime of violence to sustain his conviction on Count 68.

Accordingly, Heatley's § 924(c) convictions are predicated on offenses that are categorically crimes of violence under the elements clause. Because his predicate offenses are crimes of violence, his § 2255 motion fails on the merits.

## IV. Conclusion

For the reasons set out above, Heatley's motion to vacate his sentence pursuant to 28 U.S.C. § 2255, (see dkt. no. 662), is DENIED. Heatley's request for the appointment of counsel, (see dkt. no. 776), is denied as moot.

34

The Clerk of the Court is respectfully directed to close docket entry numbers 662, 668, 715, and 776 in docket 96-cr-515. The Clerk of the Court is also respectfully directed to close docket entry numbers 16, 25, 28, 35, 38, and 39 in docket 15-cv-9534.

SO ORDERED.

Dated:      New York, New York
            October 8, 2024

_Loretta A. Presska_

LORETTA A. PRESKA
Senior United States District Judge